IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
      v.                           )     C. A. No.  96-484 (JJF)
                                   )
DAVID H. DONOVAN,                  )
                                   )
            Defendant.             )

## PROPOSED PRETRIAL ORDER

1.    **STATEMENT OF THE NATURE OF THE ACTION, THE PLEADINGS IN WHICH ISSUES ARE RAISED AND WHETHER COUNTERCLAIMS, CROSSCLAIMS ARE INVOLVED.**

        This is a civil enforcement action pursuant to sections 309(b) and 309(d) of the Clean

Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d), for injunctive relief and civil penalties,

against David H. Donovan for discharging pollutants into waters of the United States without a

CWA Section 404 permit.  On November 1, 2000, the United States filed a Motion for Summary

Judgment requesting summary judgment on the issue of liability under section 404 of the CWA

and on Defendant's counter-claim [Dkt. 46 and 47].  Defendant filed a Cross-Motion for

Summary Judgment on December 4, 2000 [Dkt. 50].  In a Memorandum and Order dated March

26, 2002, this Court held "that the Government has established by undisputed evidence that it is

entitled to a judgment on the issue of liability under Section 404 of the Clean Water Act,"

granted the United States' Motion for Summary Judgment, and denied Defendant's Cross-

Motion for Summary Judgment.  United States v. Donovan, Civ. No. 96-484, slip op. at 8 (D.

Del. March 26, 2002) [Dkt. 51]. Accordingly, the remedy and penalty phase for Defendant's CWA violation is all that remains in this case.

The pleadings which raise these issues are the Complaint [Dkt. 1], Answer Presenting Defenses Under Rule 12 Affirmative Defenses [Dkt. 11], and Counter-Complaint for Declaratory and Injunctive Relief and for Damages Due to Conversion of Personal Property (8/1/97) [Dkt. 11].

## 2. CONSTITUTIONAL OR STATUTORY BASIS OF FEDERAL JURISDICTION, TOGETHER WITH A BRIEF STATEMENT OF THE FACTS SUPPORTING SUCH JURISDICTION.

Federal jurisdiction is based upon a federal question arising out of the laws of the United States, pursuant to sections 309(b) and 309(d) of the CWA, 33 U.S.C. § 1319(b) and 1319(d), and 28 U.S.C. sections 1331, 1345, and 1355.

Venue is proper in the District of Delaware pursuant to section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b) and (c) because the subject property is located in the District of Delaware and the events giving rise to the claim occurred within the District of Delaware.

## 3. STATEMENT OF THE FACTS THAT ARE ADMITTED AND REQUIRE NO PROOF.

This Court made the following findings of fact, which are relevant to the remedy and penalty phase, in a Memorandum and Order dated March 26, 2002. <u>Donovan</u>, Civ. No. 96-484 (D. Del. March 26, 2002) [Dkt. 51].

A.    "This lawsuit concerns a parcel of approximately 3.967 acres of land located on Route 13 in New Castle County Delaware, Delaware near the town of Smyrna, Delaware." Donovan, Civ. No. 96-484, slip op. at 1 [Dkt. 51].

B.    "The subject property was purchased by Mr. Donovan and his wife, Regina V. Donovan, on September 29, 1982. The Donovan's intended to erect a structure on the subject property to sell fruit." Id. at 2 [Dkt. 51].

C.    "In August of 1987, a biologist employed by the United States Corps of Engineers (hereinafter referred to as "Corps"), Dan Kowal, inspected the property and concluded that the entire property contained wetlands and that approximately .74 acres of the wetlands had been recently filled." Id. at 2 [Dkt. 51].

D.    "At the time of Mr. Kowal's inspection, a landowner was permitted to fill up to one acre of wetlands by right, pursuant to a nationwide permit, specifically Nationwide Permit 26, and therefore, no violation of federal law had occurred as of August 1987 with regard to Mr. Donovan's property." Id. [Dkt. 51].

E.    "Apparently because Mr. Kowal determined that the filling activity was ongoing, Mr. Donovan was informed orally that he would need to submit a 'predischarge notification' if he intended to fill over one acre of wetlands." Id. [Dkt. 51].

F.    Mr. Kowal conducted additional site inspections of the property between August and October of 1987, performing several soil borings to determine the presence or absence wetlands. Mr. Kowal found that wetlands were definitely located on the property. Technically, Mr. Kowal's testing revealed the presence of hydrophytic vegetation, hydric soils, and saturated soils." Id. at 3 [Dkt. 51].

3

G.     "Based on the test results, on December 3, 1987, Mr. Donovan was informed by telephone of the 'predischarge notification' required to be submitted to the Corps, if he intended to fill more than one acre. Mr. Donovan responded that the Corps had no right to regulate activities on his property." Id. [Dkt. 51].

H.     "In January 1993, Kevin Faust, also a biologist for the Corps, detected recent filling activity at the property. Mr. Faust put a 'Notice of Violation' on a bulldozer located on the property. The next day, Mr. Faust telephoned Mr. Donovan and advised him not to do further work until the noticed violation was resolved." Id. [Dkt. 51].

I.     "On January 29, 1993, Mr. Faust sent a written notice to Mr. Donovan informing him he had violated federal law." Id. at 3 [Dkt. 51].

J.     "On February 23, 1993, Mr. Faust again inspected the property and found that additional fill material had been placed in areas which previously contained wetlands. Mr. Faust then took field measurements and concluded that approximately 1.771 acres of wetlands had been filled." Id. at 3-4 [Dkt. 51].

K.     "After further investigation through May of 1993, on July 13, 1993, the Corps ordered Mr. Donovan, in writing, to either remove .771 acres of fill, so as to be in compliance with the nationwide permit, or to submit a predischarge notification to maintain the .771 acres with the fill material. The Corps sent additional notices on July 25 and September 8 of 1993." Id. at 4 [Dkt. 51].

L.     "Mr. Donovan responded in writing to the Corps' notices on September 13, 1993, advising that he would not comply with the Corps' directive. In essence, Mr. Donovan told the Corps that it had no authority to regulate the activity on his property." Id. [Dkt. 51].

4

M.      "At his deposition, Mr. Donovan testified about work he had done on his property over a number of years which involved, among other things, clearing trees, building a shed, and installing some drainage pipes.  In sum, Mr. Donovan admitted he had performed work on his property consistent with the filling of wetlands." Id. 3 [Dkt. 51].

N.      "Mr. Donovan asserts that 'the United States is not a holder in due course But David H. And Regina V. Donovan are holders in due course and do have a secured interest in the property.'" Id. [Dkt. 51].

O.      "Mr. Donovan contends that because he, and not the Government, owns the subject property, the Government cannot exercise any jurisdiction over the property." Id. at 5 [Dkt. 51].

P.      In granting the United States' Motion for Summary Judgment on liability, this Court previously ruled that "to establish liability on the part of Mr. Donovan under Section 404 of the Clean Water Act, the Government must establish the following elements by a preponderance of the evidence:  1) a person 2) discharged a pollutant 3) from a point source 4) into waters of the United States [and] 5) the discharge was not authorized." Id. at 6-7 [Dkt. 51].

Q.      This Court held "that it is undisputed that Mr. Donovan is a person who discharged a pollutant without authorization." Id. at 7 [Dkt. 51].

R.      This Court further held "that the Government has established by a preponderance of the evidence . . . that Mr. Donovan used devises that qualify, under the existing case law, as a 'point source,' i.e a bulldozer and shovel." Id. [Dkt. 51].

S.    This Court further held "that the Government has admitted into the record evidence that establishes that the alleged unauthorized discharges were made into waters of the United States as defined in the Clean Water Act." Id. [Dkt. 51].

T.    This Court further held "that the Government has established by undisputed evidence that it is entitled to a judgment on the issue of liability under Section 404 of the Clean Water Act" and granted the United States' Motion for Summary Judgment. Id. at 8 [Dkt. 51].

U.    The Court also held that "Mr. Donovan has not adduced any evidence to support his counterclaim," and denied Defendant's Motion for Summary Judgment. Id. [Dkt. 51].

## 4.    STATEMENT OF THE ISSUES OF FACT THAT ANY PARTY CONTENDS REMAIN TO BE LITIGATED.

### PLAINTIFF'S STATEMENT OF FACTS TO BE LITIGATED.

A.    Whether the United States' propose Wetland Restoration Plan is achievable as a practical matter.

B.    Whether the United States' propose Wetland Restoration Plan confers maximum environmental benefits.

C.    To what extent did Defendant benefit economically from the violation.

D.    To what extent is Defendant financially able to pay appropriate civil penalties in this case.

E.    To what extent did Defendant attempt in good faith to comply with the Clean Water Act and the United States Army Corps of Engineers' cease and desist orders.

### DEFENDANT'S STATEMENT OF FACTS TO BE LITIGATED

See attached e-mail from Defendant David H. Donovan.

6

5.   **STATEMENT OF THE ISSUES OF LAW THAT ANY PARTY CONTENDS REMAIN TO BE LITIGATED AND A CITATION OF AUTHORITIES RELIED UPON BY EACH PARTY.**

**PLAINTIFF'S STATEMENT OF ISSUES OF LAW TO BE LITIGATED**

A.   The form of injunctive relief to which the United States is entitled on its claim against Defendant David H. Donovan.

B.   The total amount of civil penalties to which the United States is entitled on its claims against Defendant David H. Donovan.

**DEFENDANT'S STATEMENT OF ISSUES OF LAW TO BE LITIGATED**

See attached e-mail from Defendant David H. Donovan.

6.   **LIST OF PRE-MARKED EXHIBITS INCLUDING DESIGNATIONS OF INTERROGATORIES AND ANSWERS THERETO, REQUESTS FOR ADMISSIONS AND RESPONSES, WHICH EACH PARTY INTENDS TO OFFER AT THE TRIAL. THE SPECIFICATION OF THOSE THAT WILL BE ADMITTED TO EVIDENCE WITHOUT OBJECTION, THOSE THAT WILL BE OBJECTED TO AND THE FEDERAL RULE OF EVIDENCE IN SUPPORT OF SAID OBJECTION AND THE FEDERAL RULE OF EVIDENCE RELIED UPON BY A PROPONENT OF THE EXHIBIT.**

**PLAINTIFF'S EXHIBITS**

Defendant objects to all of the United States' exhibits solely on the ground that the Court denied the United States' Motion for Summary Judgment on Restoration and Civil Penalty in an order dated March 24, 2005 [Dkt. 65].

1.   United States v. Donovan, Civ. No. 96-484 (D. Del. March 26, 2002) [Dkt. 51].

2.   Deposition of David H. Donovan, July 7, 2000.

3.   Dredged and/or Fill Material Removal and Wetlands Restoration Plan by Jeffery Steen, dated July 1, 2004.

4.   Westland Restoration Cost Estimate prepared by Tom Munyon, U.S. Army Corps of Engineers, dated July 7, 2004.

5.    Expert Report of Jeffrey Steen, dated July 27, 2005.

6.    Curriculum Vitae of Jeffrey Steen.

7.    U.S. Department of Agriculture, Soil Conservation Service in cooperation with Delaware Agricultural Experiment Station. 1970. Soil Survey, New Castle County. U.S. Government Printing Office, Washington, D.C., pp. 95.

8.    U.S. Geological Survey. 1955. Photoinspected 1977. Topographic Map. 7.5 Minute Quadrangle. Clayton, Del.

9.    U.S. Department of Interior, Fish and Wildlife Service. 1981. National Wetland Inventory Map, Smyrna, Del.

10.   U.S. Geological Survey. 1956. Photoinspected 1982. Topographic Map. 7.5 Minute Quadrangle. Smyrna, Del.

11.   U.S. Department of Interior, Fish and Wildlife Service. 1982. National Wetland Inventory Map, Clayton, Del.

12.   Aerial Photography: prepared by Aerial Data Reduction, Inc.; photograph date March 1, 1982; scale one inch equals 100 feet; frame LN 13-628.

13.   Aerial Photography: source unknown; date 1987.

14.   U.S. Environmental Protection Agency, Office of Water Regulations and Standard, Office of Wetland Protection. 1990. Wetlands. http://www.epa.gov/owow/wetlands/guidance/wlnps.html#32.

15.   U.S. Department of Agriculture, Soil Conservation Service. 1991. Hydric Soils of the United States, In Cooperation with the National Technical Committee for Hydric Soils. Miscellaneous Publication Number 1491.

16.   Aerial Photography: U.S. Department of Agriculture; photograph date March, 1992; Color infrared; Acquired through the TerraServer internet website.

17.   U.S. Army Corps of Engineers, Philadelphia District, Regulatory Branch, Surveillance and Enforcement Section. Administrative Record. Case Number: CENAP-OP-R-199300274.

18.   Aerial Photography: In-house surveillance flight; taken by Mr. Kevin Faust, U.S. Army Corps of Engineer, Philadelphia District; date March 30, 1993.

19.  Site Plan Entitled: "Donovan, David, Action I.D. 199300274, Tax Parcel # 15-015.00-028, Attachment 1;" prepared by Mr. Kevin Faust, U.S. Army Corps of Engineers, Philadelphia District, Dover Delaware Field Office, Dover, Delaware; prepared on April 15, 1993.

20.  Environmental Law Institute. 1999. Protecting Delaware's Natural Heritage: Tools for Biodiversity Conservation. Environmental Law Institute Report. ISBN # 1-58576-000-5.

21.  Aerial Photography: prepared by EarthData International of Maryland, LLC; photograph date 2002; acquired from New Castle County website; scale one inch equals 162.5 feet.

22.  Aerial Photography: prepared by EarthData International of Maryland, LLC; photograph date 2002; acquired through New Castle County website; scale one inch equals 327.4 feet.

23.  Site Plan Entitled: "Donovan, David, Action I.D. 199300274, Tax Parcel # 15-015.00-028,;" prepared by Mr. Douglas Janiec, U.S. Army Corps of Engineers, Philadelphia District, Dover Delaware Field Office, Dover, Delaware; prepared on July 14, 2004.

24.  Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Robert Eckhardt; date May 25, 1985.

25.  Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Dan Kowal; date August 10, 1987.

26.  Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Dan Kowal; date August 14, 1987.

27.  Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Dan Kowal; date September 4, 1987.

28.  Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Dan Kowal; date September 8, 1987.

29.  Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Dan Kowal; date September 24, 1987.

30.  Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Dan Kowal; date October 6, 1987.

31.  Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Dan Kowal; date October 9, 1987.

32.    Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Kevin Faust; date January 28, 1993.

33.    Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Kevin Faust (Mr. Charles McNally and Mr. Gene Mullins, Delaware Department of Natural Resources and Environmental Control, were present); date February 23, 1993.

34.    Site Inspection by U.S. Army Corps of Engineers: performed by Mr. Kevin Faust; date March 1, 1993.

35.    Surveillance Flight by U.S. Army Corps of Engineers: performed by Mr. Kevin Faust; date March 30, 1993.

36.    Site Inspection by U.S. Army Corps of Engineers (Drive-by): performed by Mr. Kevin Faust; date May 17, 1993.

37.    Site Inspection by U.S. Army Corps of Engineers (From State Route 13 Right-of-Way): performed by Mr. Jeffrey Steen, Mr. Barry Gale, Mr. Kevin Maley, and Mr. Douglas Janiec; date June 30, 2004.

38.    Expert Report of Joseph E. Gerber regarding David H. Donovan's Ability to Pay a Civil Penalty, dated July 29, 2005.

39.    Resume of Joseph E. Gerber.

40.    Schedule of properties for David H. Donovan.

41.    Account application and statements from Man Financial (filed under seal as Bates range MF1-93).

42.    Account application and statements from Man Securities (filed under seal as Bates range MS1-83).

43.    Account application and statements from Bank of America (filed under seal as Bates range BOA1-128).

44.    Account application and statements from Wilmington Trust (filed under seal as Bates range WT1-114).

45.    Insurance documents from State Farm Insurance (filed under seal as Bates range SF1-766).

46.    Expert Report of Gerry Harris, dated July 29, 2005.

47.    Resume of Gerry Harris.

48.    Deeds and property records for 313 Central Avenue, Wilmington, Delaware 19805, parcel no. 0703830108.

49.    Deeds and property records for 72 acres of farmland, 0 SS Union Church Rd.. Townsend, Delaware 19734, parcel no. 1401700006.

50.    Deeds and property records for 3.97 acres, 4800 Dupont Highway, Smyrna, Delaware 19977, parcel no. 1501500028.

51.    Deeds and property records for 491 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500034.

52.    Deeds and property records for 554 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500068.

53.    Deeds and property records for 536 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500070.

54.    Deeds and property records for 534 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500071.

55.    Deeds and property records for 532 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500072.

56.    Deeds and property records for 530 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500073.

57.    Deeds and property records for 528 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500074.

58.    Deeds and property records for 526 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500075.

59.    Deeds and property records for 550 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500076.

60.    Deeds and property records for 546 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500077.

61.    Deeds and property records for 542 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500078.

62.    Deeds and property records for 517 Massey Church Road, Smyrna, Delaware 19977, parcel no. 1501500163.

63.    Deeds and property records for 124 Ponder Lane, Smyrna, Delaware 19977, parcel no. 1501500167.

64.    Deeds and property records for 118 Ponder Lane, Smyrna, Delaware 19977, parcel no. 1501500168.

65.    Deeds and property records for 112 Ponder Lane, Smyrna, Delaware 19977, parcel no. 1501500169.

66.    Deeds and property records for 106 Ponder Lane, Smyrna, Delaware 19977, parcel no. 1501500170.

67.    Deeds and property records for 115 Chestnut Avenue, Wilmington, Delaware 19805, parcel no. 1900100129.

68.    Account application and statements from Man Financial.

69.    Account application and statements from Man Securities.

70.    Account application and statements from Bank of America.

71.    Account application and statements from Wilmington Trust.

72.    Insurance documents from State Farm Insurance.

73.    Resume of Philip J. McGinnis, CCIM, GAA.

74.    Real Estate Appraisal of Donovan property, 517 Massey Church Road, Smyrna, New Castle County, Delaware, prepared by Philip J. McGinnis, CCIM, GAA, dated July 22, 2005.

75.    Real Estate Appraisal of Donovan property, 419 Massey Church Road, Smyrna, New Castle County, Delaware, prepared by Philip J. McGinnis, CCIM, GAA, dated July 22, 2005.

76.    Real Estate Appraisal of Donovan property, 4800 DuPont Highway, Smyrna, New Castle County, Delaware, prepared by Philip J. McGinnis, CCIM, GAA, dated July 22, 2005.

77.    Transcript of Court Proceeding on April 26, 2000.

78.    Letter from David H. Donovan to Frank J. Cianfrani, dated September 13, 1993.

## DEFENDANT'S EXHIBITS

<u>See</u> attached e-mail from Defendant David H. Donovan.

**United States' Objections**: Defendant has failed to identify any exhibits. Accordingly,

the United States is not able to make any objections.

7.    **NAMES AND ADDRESSES OF ALL WITNESSES A PARTY INTENDS TO CALL TO TESTIFY EITHER IN PERSON OR BY DEPOSITION AT THE TRIAL AND SPECIALTIES OF EXPERTS TO BE CALLED AS WITNESSES.**

## PLAINTIFF'S WITNESSES

### Fact Witnesses

A.    Deposition of Defendant David H. Donovan.

B.    David H. Donovan, Defendant.  Mr. Donovan's address is 517 Massey Church

Road, Smyrna, Delaware 19977.

### Expert Witnesses

A.    Jeffrey Steen, Chief of the Surveillance and Enforcement Section, Regulatory

Branch, Philadelphia District, United States Army Corps of Engineers.  Mr. Steen's address is

2311 Walnut Lane, Wilmington, Delaware 19810.  Mr. Steen is an expert witness in the filed of

wetland restoration.

B.    Joseph Gerber, Forensic Accountant.  Mr. Gerber's address is 3900 Jermantown

Road, Suite 360, Fairfax, Virginia 22030.  Mr. Gerber is an expert witness is the filed of forensic

accounting.

C.    Gerry Harris.  Mr. Harris' address is TLI Systems, 4340 East West Highway,

Suite 1120, Bethesda, MD  20814.  Mr. Harris is an expert witness is the field of business.

D.    Philip J. McGinnis, CCIM, GAA, Dover Consulting Services, Inc., Real Estate

Valuation and Consulting. Mr. McGinnis' address is 555 East Loockerman Street, Dover,

Delaware 19901. Mr. McGinnis is an expert in the field of real estate valuation.

**Custodians of Records**

A.    Valerie Kehr, State Farm Insurance, complaint tracking, 1 State Farm Drive

Frederick, Maryland 21701-9332. Telephone: 301-620-5052.

B.    Allison Berl, Wilmington Trust, 1100 N. Market Street, Wilmington  Delaware

19890. Telephone: (302) 651-8401.

C.    Elizabeth A. Stanford, Bank of America, Subpoena Processing Department,

Custodian of Records,1000 W. Temple Street, 5th Floor, Los Angeles, California 90012.

Telephone: (213) 240-6012.

D.    Philip Tanzar, VP & Assistant General Counsel, Man Financial Inc / Man

Securities Inc., 440 S. LaSalle St., Suite 2000, Chicago, IL 60605. Telephone: (312) 663-7500.

**DEFENDANT'S WITNESSES**

See attached e-mail from Defendant David H. Donovan.

8.    **BRIEF STATEMENT OF WHAT PLAINTIFF INTENDS TO PROVIDE IN SUPPORT OF PLAINTIFF'S CLAIMS, INCLUDING THE DETAILS OF THE DAMAGES CLAIMED, OR OTHER RELIEF SOUGHT, AS OF THE DATE OF PREPARATION OF THE DRAFT ORDER.**

In a Memorandum and Order dated March 26, 2002, this Court held that Defendant David

H. Donovan discharged fill material into 1.771 acres of forested wetlands near Smyrna,

Delaware, in violation of the Clean Water Act. Donovan, Civ. No. 96-484 (D. Del. March 26,

2002) [Dkt. 51]. The remedy and penalty phase are all that remain in this case. The sole issues

for the Court to resolve during this phase are: (1) the type of injunctive relief that should be

14

awarded under CWA Section 309(b) to restore the 1.771 acres of wetlands that this Court held

Defendant destroyed and (2) an appropriate civil penalty under CWA Section 309(d). 33 U.S.C.

§§ 1319(a) and (d).

Restoration of the wetlands Defendant destroyed is an inherent part of the injunctive

relief afforded under the Clean Water Act and is squarely within this Court's equitable

jurisdiction. 33 U.S.C. § 1319(b). The wetlands that Defendant destroyed previously provided

water purification (by intercepting road runoff from State Road 13 that would otherwise enter

Sawmill Branch and its tributaries), storm flow attenuation (by absorbing the volume and

retarding the speed of flood waters), and habitat for wildlife. Accordingly, the United States is

seeking injunctive relief requiring Defendant to restore these damaged wetland functions.

The United States intends to present evidence that the wetland restoration the United

States is proposing will confer the maximum environmental benefits by restoring the 1.771 acres

of wetlands and their ecological functions, such as pollutant filtering, flood control and wildlife

habitat, and is achievable as a practical matter. The proposed wetland restoration provides a

practical blueprint for restoring the 1.771 acres of wetlands that the Defendant destroyed. It

requires, among other things, that Defendant remove all of the fill material and structures in the

violation site, reestablish the surface elevations to pre-disturbance levels, and seed the area with a

wetland grass seed mix in order to provide stabilization of the site and allow for natural

revegetation of the site. Because the 1.771 acres of wetlands that Defendant destroyed were part

of a large wetland complex that is still intact, there is a high likelihood that the restoration will be

successful and the wetlands will once again provide water purification, flood control, and

wildlife habitat.

15

In addition, the United States also intends to demonstrate that the wetland restoration it proposes bears an equitable relationship to the degree and kind of wrong it is intended to remedy. A restoration plan bears an equitable relationship to the degree and kind of wrong that it is intended to remedy when the defendant's burden of performing the plan is commensurate with the defendant's culpability. United States v. Cumberland Farms of Conn., Inc., 826 F.2d 1151, 1165 (1st Cir. 1987). As the Court determined, Defendant's illegal conduct took place despite repeated warnings from the Army Corps of Engineers and requests that he apply for a nationwide permit for work in the wetlands. In addition, Defendant violated not one, but three cease and desist letters. A defendant who acts in disregard of a cease and desist order is not in a strong position to argue equity. United States v. Pozsgai, 999 F.2d 719, 736 (3d Cir. 1993) ("repeated noncompliance with the Act and with the Corps' directives to stop filling foreclose any such equitable argument"); United States v. Ciampitti, 615 F. Supp. 116, 124 (D.N.J. 1984); United States v. Robinson, 570 F. Supp. 1157, 1165 (M.D. Fla. 1983). Similarly, Defendant is also poorly placed to make equitable arguments because he disregarded the opinions of the Army Corps of Engineers' experts on wetland jurisdiction. Robinson, 570 F. Supp. at 1164, 1165. Finally, because Defendant discharged fill material into wetlands he owns, there is no risk that the requiring restoration would impose obligations on an innocent person. See Cumberland Farms, 647 F. Supp. at 1183. Although the proposed wetland restoration will place a burden on Defendant to complete the work, he has no one to blame but himself for that burden. In sum, the Restoration Plan is designed to restore the functions that the wetlands provided before Defendant destroyed them. The Court should order Defendant to perform the proposed wetland restoration

because it will achieve maximum environmental benefits, is practical and achievable, and is equitable in light of the harm Defendant has caused.

The Clean Water Act also expressly requires civil penalties. Id. § 1319(d). It expressly provides that any person who violates the Act shall be liable for civil penalties "not to exceed $25,000 per day for each violation." 33 U.S.C. § 1319(d). Congress authorized the government to adjust civil penalties for inflation. The maximum penalty for violations that take place after January 30, 1997, is $27,500 per day. 61 Fed. Reg. 69,360 (Dec. 31, 1996). The maximum civil penalty for violations that occur after March 15, 2004, is $32,500 per day. 69 Fed. Reg. 7121 (Feb. 13, 2004).

"If a district court finds a violation [of the Act], then civil penalties under 33 U.S.C. § 1319(d) are mandatory." NRDC v. Southwest Marine, Inc., 236 F.3d 985, 1001 (9th Cir. 2000); Leslie Salt v. United States, 55 F.3d 1388, 1397 (9th Cir. 1995); Atlantic States Legal Found., Inc. v. Tyson Foods, Inc., 897 F.2d 1128, 1142-43 (11th Cir. 1990). Because this Court has already held that Defendant violated the Clean Water Act by illegally destroying 1.771 acres of wetlands, a civil penalty is mandatory in this case.

A substantial civil penalty is warranted because Defendant's flagrant violations have continued for more than eleven years despite three federal cease and desist letters demanding that he remove the fill material and this Court's ruling that he violated the Clean Water Act. Despite this Court's Order, Defendant has allowed the fill material to remain in the wetlands for more than three additional years. In addition, Defendant previously sent a threatening letter to the federal regulatory official in charge of his case. Defendant's intentional actions, egregious contempt for the law, and attempt to intimidate a federal regulatory official, together with the

17

damage his illegal conduct continues to have on the environment and the community, demand a strong judicial response. Such a response is necessary to prevent this Defendant and others from considering the illegal destruction of our nation's wetlands to be an acceptable cost of doing business. Therefore, in addition to restoration, the United States is also seeking a monetary penalty from the Defendant that is commensurate with the willful nature of his violations. Defendant's conduct in this litigation has also been egregious, as he has openly refused to answer written discovery requests or questions at his deposition.

The economic impact of the penalty on the Defendant is the only factor that may support any reduction of the statutory maximum penalty. Defendant, however, has refused to provide any information regarding his finances throughout this case. The United States first requested such information on April 26, 1999, in written discovery requests. Defendant, however, refused to produce any financial information, even after the United States filed a motion to compel responses on July 21, 1999. Defendant again refused to provide any financial information during his deposition on July 7, 2000. Donovan Dep. at 157-58, 168-70.

Despite the Defendant's failure to cooperate, we have evidence that the Defendant has accumulated substantial wealth that he has hidden through a complex scheme of sham companies, including an offshore company. The Defendant owns real property, other than his personal residence, which was appraised at $300,000 as of July 16, 2005. In addition, his personal residence, a single family home at 517 Massey Church Road, Smyrna, Delaware, was appraised at $190,000 on July 16, 2005. The total value of these properties is $490,000. We also intend to present evidence that during the period 1959 to 2005, the Defendant has purchased or sold approximately twenty pieces of real property, which has given him the opportunity to

18

accumulate wealth. In addition, from at least 1978 to 2000, the Defendant operated his own hauling business utilizing several dump trucks and drivers. The scope and duration of the business indicates that the Defendant had the opportunity to accumulate additional personal wealth.

While it is not possible to determine the maximum penalty the Defendant is able pay given his failure to provide any financial information and efforts to hide his wealth through sham companies, the Defendant should be able to pay at least $300,000, less any encumbrances on the real property he owns. This amount excludes his personal residence, which is valued at $190,000, and any additional wealth he accumulated through his businesses and other real estate transactions.

9. **BRIEF STATEMENT OF WHAT THE DEFENDANT INTENDS TO PROVE IN HIS DEFENSE.**

See attached e-mail from Defendant David H. Donovan.

10. **STATEMENTS BY COUNTERCLAIMANTS OR CROSSCLAIMANTS COMPARABLE TO THAT REQUIRED BY PLAINTIFF.**

Not applicable.

11. **ANY AMENDMENTS TO THE PLEADINGS DESIRED BY ANY PARTY WITH A STATEMENT WHETHER IT IS UNOPPOSED OR OBJECTED TO AND THE GROUNDS THEREOF.**

Not applicable.

12. **CERTIFICATION THAT A TWO-WAY COMMUNICATION HAS OCCURRED BETWEEN PERSONS HAVING THE AUTHORITY IN GOOD FAITH EFFORT TO EXPLORE THE RESOLUTION OF THIS CONTROVERSY BY SETTLEMENT.**

The parties has initial discussion regarding mediation with Magistrate Judge Thynge, but were not able to pursue mediation.

13.    **ANY OTHER MATTERS THAT THE PARTIES DEEM APPROPRIATE.**

Defendant David H. Donovan has failed to identify any fact witnesses or expert witnesses, or to submit any expert reports, and has declined to take any depositions in this case. Defendant has also failed to satisfy the requirements of Local Rule 16.4, by not cooperating in the preparation of the pretrial order. In particular, Defendant has not identified any defense exhibits, offered specific objections to the United States' exhibits, and has refused even to stipulate to the authenticity of his own financial statements and insurance documents. In addition, he persists in litigating his counterclaim, which the Court previously resolved when it granted the United States' Motion for Summary Judgment.

Given the Court's extensive findings of fact in the March 26, 2002 order which are directly relevant to the restoration and civil penalty phase; evidence that Defendant owns real property, other than his personal residence, which was appraised at $300,000 as of July 16, 2005, among other assets; and Defendant's failure to depose any of the United States' experts, submit any of his own expert reports, identify any experts, identify any exhibits, cooperate in the preparation of the pretrial order or otherwise comply with Local Rule 16.4, the remedy and penalty phase of this case should be resolved through summary judgment. Allowing the United States to file a motion for summary judgment on restoration and civil penalty may avoid the need for any trial or could narrow the issues for trial and thereby preserve judicial resources and the resources of the parties.

In addition, as indicated above, Defendant has refused to stipulate to the authenticity of his own financial statements and insurance documents. The United States filed those documents with the Court under seal on October 6, 2005 and November 30, 2005, and provided copies of

20

those documents to Defendant at the same time. Because the custodians of some of the records are located as far as Illinois and California, the United States intends to seek a ruling in limine regarding their authenticity to avoid unnecessary witness testimony and trial costs, shorten the length of the trial, and preserve judicial resources.

See attached e-mail from Defendant David H. Donovan.

**THIS ORDER** shall control the subsequent course of the actions unless modified by the court to prevent manifest injustice.

Patricia Hannigan (DE I.D. No. 2145)
Assistant United States Attorney
District of Delaware

David H. Donovan
Pro Se

Steven E. Rusak (DE I.D. No. 3144)
Trial Attorney
United States Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
Washington, D.C. 20004

Attorneys for Plaintiff

The Honorable Joseph J. Farnan, Jr.

**Rusak, Steve (ENRD)**

| | |
|---|---|
| **From:** | pepabby2@juno.com |
| **Sent:** | Monday, November 21, 2005 8:34 PM |
| **To:** | Rusak, Steve (ENRD); Hannigan, Patricia (USADE); Zivnuska, Mary Anne (ENRD); Barry.F.Gale@nap02.usace.army.mil |
| **Subject:** | Steve |
| | |
| **Attachments:** | tmp.htm |



tmp.htm (9 KB)

       Thanks for advising me of your intentions.

1.     I am advising you that since the financial and insurance
documents from State Farm Insurance, Wilmington Trust, Bank of America,
Man Securities and Man Financial are all computer generated documents
which can not be trusted, I will not stipulate to their authenticity.

2.     Further, due to the fact that the Court has denied the
government?s MOTION FOR SUMMARY JUDGEMENT requesting sanctions under the
Clean Water Act, I will object to any and all the government?s exhibits,
but I will gladly use your exhibits as evidence in my counterclaim for
the taking of my private property for public use without just
compensation.

3.     Further, the penalty and restoration phase of this case has
already been resolved by the Court when it denied the government?S MOTION
FOR SUMMARY JUDGMENT requesting sanctions under the Clean Water Act.

4.     Further, please advise whether you agree that the Court should
resolve the motion for summary judgement counterclaim for the taking of
my private property for the personal benefit of public use without just
compensation phase of the case by filing an answer which the government
has not yet done and the filing of briefs (summary judgement motions) or
are you prepared to go to trial and show that your actions for the past
fourteen years have not been an invasion and interference with my use and
enjoyment of my private property and that your action did not diminish my
property value expectations.  I need to include your response to this
question in my proposed order.

5.     Finally, please let me know your thoughts on a settlement of my
counterclaim.  I would be willing to accept a settlement of the 37
million as of the date of March 2004 when I filed the summary judgment
motion counterclaim, but if you wish to continue the case, I will be
adding $1,000.00 a day for the continued taking of my private property
without just compensation until the case is final.

Please do not hesitate to call me at 302-653-8692 if you have any
questions or concerns and by the way, thank you for your attached copy of
your draft of your pretrial order, your admissions and confessions
thereon are great and with that, my counterclaim is a done deal!

                                        dave d.

On Tue, 15 Nov 2005 14:09:05 -0500 (EST) "Steve.Rusak@usdoj.gov"
<Steve.Rusak@usdoj.gov> writes:

> Mr. Donovan,
>
>          Thank you for returning my call of November 9 today.  As we
> discussed earlier today, I have attached a draft pretrial order.  I
> am
> still refining my section and will be adding additional exhibits.
> As
> promised, I have identified the sections that you need to address.
> If
> you want to include any inserts for your sections, please provide
> them
> to me as soon as possible.
>
>          Also, as we also discussed, please advise whether you will
> stipulate to the authenticity of the financial and insurance
> documents I
> previously provided to you from State Farm Insurance, Wilmington
> Trust,
> Bank of America, Man Securities and Man Financial.  Also, please
> advise
> whether you will object to any of the exhibits I have listed.
> Please
> advise whether you agree that the court should resolve the penalty
> and
> restoration phase of the case by filing briefs (summary judgment
> motions) instead of a trial.  I need to include you response to
> these
> questions in my sections of the proposed order.
>
>          Finally, as we discussed, please also let me know your
> thoughts
> about settlement.
>
>          Please do not hesitate to call me at (202) 514-9275 if you
> have
> any questions or concerns.  Thanks
>
> Steven Rusak
>  <<#256849-v1-Donovan_PROPOSED_PRETRIAL_ORDER.WPD>>
>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>    v.<br><br>DAVID H. DONOVAN,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 96-484

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of December, 2005, I caused a true and correct copy of

the Proposed Pretrial Order to be served as indicated below, postage pre-paid, on the following:

Mr. David H. Donovan
517 Massey Church Road
Smyrna, Delaware 19977
Tel: (302) 653-8692
Fax: (302) 653-9254

[ ] U.S. Mail
[X] Overnight Mail
[ ] Hand Delivery
[ ] Telefacsimile
[ ] E-mail

*Steven E. Rusak*