FindLaw | For the Public | For Small Business | For Legal Professionals



**Research a Lawyer**

Use the Thomson Legal Record to access a lawyer's litigation record, articles and more!

- Search by Name
- Search by Experience

**Search FindLaw**

[Corp Counsel ▼]

[         ]

[Search!]



**Thomson Legal Record**
View litigation records, presiding judges, published articles and much more

[View Records!]

**Browse Industries**

| Aerospace & Defense |
| Construction |
| Consumer Products |
| Drugs & Biotech |
| Energy |
| Financial Services |
| Food & Agriculture |
| Health Care |
| Insurance |
| Media & Entertainment |
| Real Estate |
| Retail |
| Services |
| Technology |
| Telecommunications |
| Transportation |

My current location: **Yakima, WA** | Change Location

FindLaw > Library

# U.S. Supreme Court Severely Narrows U.S. Army Corps of Engineers' Jurisdiction Over Waters of the United States

 By *Edward F. Meyers* of Arter & Hadden LLP

## Overview

Section 404(a) of the Clean Water Act authorizes the Army Corps of Engineers to issue permits allowing the discharge of dredged or fill material into navigable waters, which are defined as "waters of the United States."

In accordance with regulations promulgated in the 1970s, the Corps has expanded its jurisdiction to include the discharge of such material into isolated, intrastate waters of the United States, including wetlands, "the use, degradation or destruction of which could affect interstate or foreign commerce."

Developers and other members of the regulated community have generally, if not enthusiastically, followed the requirements of the comprehensive permitting program that has evolved from the Corps' position.

A consortium of suburban Chicago municipalities seeking to create a disposal facility challenged the Corps' refusal to issue a permit. On January 9, 2001, the United States Supreme Court (in a five to four decision) reversed the Seventh Circuit Court of Appeals and held that the Corps has no jurisdiction to regulate the discharge of fill material into isolated intrastate ponds.

## Facts of the Case

The Solid Waste Agency of Northern Cook County acquired a 533 acre abandoned sand and gravel mining site. The site contained trenches that had evolved into permanent and seasonal ponds from one-tenth to several acres in area and from several inches to several feet in depth. The site was being

Travel & Leisure
More Centers...

**Browse Practice Areas**
ADR
Advertising
Antitrust
Bankruptcy
Class Action Defense
Corporate Finance
Corporate Governance
E-Business & Internet
Environmental
Government Relations
Intellectual Property
International
Labor & Employment
Litigation
Mergers & Acquisitions
Outsourcing
Privacy & Security
Securities
Securities Litigation
Tax
Tax-Exempt Organizations
White Collar Crime
More Centers...

used by migratory birds and contained a blue heron rookery. The Waste Agency sought to fill some of the ponds and turn the site into a non-hazardous disposal facility.

The Illinois Environmental Protection Agency and other involved state agencies issued the necessary permits but the Corps refused to issue a 404(a) permit under the Clean Water Act for the purpose of authorizing the proposed fill into what the Corps acknowledged were not wetlands but contended were waters of the United States within the definition of the Clean Water Act.

The Waste Agency filed suit challenging the jurisdiction of the Corps over fills into isolated waters and lost in the Seventh Circuit Court of Appeals. The Waste Agency raised two arguments: 1. The Corps exceeded its authority in interpreting the Clean Water Act to cover nonnavigable isolated intrastate waters based upon the presence of migratory birds, and 2. Congress lacked the power under the Commerce Clause to grant such regulatory jurisdiction.

**Findings**

The Supreme Court, in reversing, never reached the second question dealing with the constitution and found for the Waste Agency based on the regulatory question.

The Supreme Court acknowledged that, consistent with its 1985 finding in United States v. Riverside Bayview Homes, Inc., wetlands adjacent to or abutting navigable water bodies were subject to Corps jurisdiction but held that regulations issued by the Corps expanding the definition of "waters of the United States" to include "intrastate lakes, rivers, streams, wetlands or natural ponds, the use, degradation or destruction of which could affect interstate or foreign commerce" went too far.

The Court traced the history of the expansion by the Corps of the definition of waters of the United States as first defined in the Clean Water Act. The Court noted that the Corps in its 1974 regulation interpreting Section 404 (a) emphasized that waters to be protected must be navigable and used in interstate or foreign commerce. However, in 1977, the Corps expanded its regulations to define waters of the United States to include "isolated wetlands, and lakes, and other waters that are not part of a tributary system to interstate waters or to navigable waters of the United States." Then in 1986 the Corps attempted to clarify its jurisdiction by stating that Section 404 (a) extends to isolated intrastate waters that, among other things, provide habitat for migratory birds that cross state lines.

The Court distinguished its holding in the Riverside Bayview Homes case, where the waters over which the Corps was held to have jurisdiction were, as in this case, not navigable, by stating that in that case, Congress had unequivocally approved the Corps' regulations interpreting the Clean Water Act to cover wetlands adjacent to navigable waters.

### Impact of the Decision

While the "waters of the United States" in this case were not wetlands, there is little doubt that the case stands for the proposition that the Corps no longer has jurisdiction under the Clean Water Act over the discharge of dredged or fill materials into waters of the United States, including wetlands, which are not adjacent to navigable waters. Arguments over the meaning of the word "adjacent" are certain to follow.

© 2001 Arter & Hadden LLP



Help | Site Map | Contact Us | About Us | Disclaimer | Privacy Policy
Copyright © 1994-2005 FindLaw, a Thomson business