may discharge debtors from further liability on their contracts on such terms and conditions as shall be reasonable. But such laws can only be applied to contracts subsequently made within the State, and between residents thereof.[1]

*Contracts of Guaranty.* — Contracts of suretyship or of secondary liability are as much within the protection of the Constitution as are the principal contracts which they secure, or on which they depend. Therefore, where the law makes stockholders in a corporation liable for the corporate debts, the liability, so far as existing debts are concerned, is one which cannot be taken away or reduced by a change in the law.[2] But penalties imposed by statute may be released by statute at any time before they are actually recovered.[3]

*Objectionable Considerations.* — The fact that a contract had its origin in a consideration now recognized as immoral and insufficient is immaterial, provided it was sufficient under the law at the time. Therefore, contracts for the purchase price of slaves were enforced after emancipation, notwithstanding the State by its constitution had provided that they should not be; the States having no more power to impair the obligation of a contract by constitutional provision than by any other law.[4]

*Adding to Contracts.* — It is as incompetent to import new terms into a contract as it is to take away or detract from the force of those already there. But this point will receive some attention hereafter.

---

[1] Ogden v. Saunders, 12 Wheat. 278; Baldwin v. Hale, 1 Wall. 223; Carbee v. Mason, 64 N. H. 10. A state insolvent law, passed while a national bankrupt law is in force, is not utterly void, but becomes good after the repeal of the bankrupt law. Tua v. Carriere, 117 U. S. 201.
[2] Ochiltree v. Railroad Co., 21 Wall. 249.
[3] Confiscation Cases, 7 Wall. 454; United States v. Tynen, 11 Wall. 88.
[4] White v. Hart, 13 Wall. 646. See Delmar v. Insurance Co., 14 Wall. 661; Marsh v. Burroughs, 1 Woods, 463; Swain v. Seamans, 9 Wall. 254.

---

*Is Congress restrained?* — That Congress should not have been prohibited from impairing the obligation of contracts, as the States were, may well excite some surprise. It was certainly never intended that Congress under any circumstances should exercise that tyrannical power, and it probably never occurred to any one as possible that it would ever attempt to do so. While, if it should attempt it, in the case of private contracts, the act, it would seem, might well be held not to be legitimate legislation, and therefore incompetent and void,[1] yet the clause is considered not to apply to congressional legislation.[2] In respect to contracts by the government itself, so long as they remain executory, if it shall choose not to perform them, there can be no redress. A government cannot be compelled to pay its debts against its will by any process short of war or of forcible reprisal. And Congress may indirectly impair the obligation of private contracts, through its power to debase the currency and to establish and change the law of tender, as it did to some extent in the act making treasury-notes a lawful tender in payment of pre-existing debts. For such wrongs only the political remedies can be available.

SECTION II. — PROTECTION TO PROPERTY.

*The Constitution.* — The fifth amendment to the Constitution provides that no person shall be deprived of property without due process of law. This provision is a restraint upon the federal powers only. The fourteenth amendment supplements this by providing that no State shall deprive any person of property without due process of law.

*What is Property?* — That is property which is recognized as such by the law, and nothing else is or can be. "Property and law are born and must die together.

---

[1] See opinion in Gunn v. Barry, 15 Wall. 610.
[2] Mitchell v. Murphy, 110 U S. 633.

Before the laws, there was no property; take away the laws, all property ceases."[1] In America the law which determines what is property is for the most part the common or customary law, though to this some additions are made by statute. Whatever a man produces by the labor of his hand or his brain, whatever he obtains in exchange for something of his own, and whatever is given to him, the law will protect him in the use, enjoyment, and disposition of. The wild beast is the property of him who captures and subdues it, provided he keeps it subjected to his dominion; game belongs to him who slays it, and so on. The natural increase of domestic animals is the property of the owner of the mother, and the natural productions of the soil, as well as the crops produced by the labor of man, belong to him who owns the soil. And the right to continue the practice of the learned professions is property which cannot arbitrarily be taken away.[2]

When an article either intrinsically or by the use to which it is put becomes prejudicial, the law may withdraw from it the attribute of property, and then any one may be at liberty to destroy it. When anything becomes a nuisance, the party incommoded may destroy it if the nuisance cannot otherwise be abated; and if the public are incommoded, the right to abate is general. Sometimes things are declared nuisances by law because of their injurious influence upon the morals of the community; as for example, lottery tickets when kept for sale, the implements by means of which games of chance are played, when kept for gambling, and intoxicating liquors when offered for sale in violation of law. But when the wrong consists solely in the use to which an article, not a nuisance in itself, is put, the owner's property in it cannot be taken away until it has been judicially determined that a breach of the law has been committed. A private citizen

---

[1] Bentham, Principles of the Civil Code, ch. 8.
[2] Dent v. West Virginia, 129 U. S. 114.

---

cannot determine for himself that a property right in some other person has been forfeited by disobedience of law.[1]

*Who restrained.* — The prohibitions of the Constitution apply to all departments of government, and to all private citizens. The executive must of course always show authority of law for his action: and when this is out of his power, what he does cannot be by due process of law. All ministerial officers must show warrant for everything they assume to do in apparent disturbance of the rights of others. The judiciary, from the highest courts to the lowest, must exercise its authority within the limits permitted by law, or it will act without jurisdiction, and therefore without due process.

The validity of judicial action is tested by the one question, Was it done with jurisdiction? Jurisdiction is commonly said to be, first, of the subject-matter, and, second, of the persons concerned. The former divides itself into territorial and subjective. Every court has its territorial jurisdiction assigned to it by law, and its process is inoperative outside the prescribed limits. And within those limits the court may take cognizance of such causes of action as may be committed to it by law, and by the acts of parties having a right to bring suit. For example, the Circuit Court of the United States for the District of Delaware has a territorial jurisdiction within that State only; but to ascertain what may be the subject-matter of a suit in that court, it is necessary to consult the Constitution and the laws of the United States, and sometimes also the common law. The Constitution prescribes to what cases the jurisdiction *may be* extended; the laws of Congress extend it to all these cases, or to less than all, as shall be deemed wise; but these laws are made with those common-law principles in view which determine what causes of action are local, and what are transitory. Thus, the Constitution permits a citizen of another State to sue a citizen of Dela-

---

[1] Fisher v. McGirr, 1 Gray (Mass.), 1.

ware in the United States Courts; the law of Congress authorizes the suit to be brought in the United States Circuit Court only when the amount or value in controversy exceeds five hundred dollars. But if the matter in dispute was the recovery of possession of land in another State, it could not be brought in Delaware, because such an action is local, and must be brought where the land is; while if it was the recovery of the amount of a promissory note, it would be immaterial where the right of action arose, as such an action is always transitory; by which is meant, that it may be brought wherever service can be obtained, if the local law permits.

Consent can never confer jurisdiction of the subject-matter of suits.[1] Courts are created, and their jurisdiction limited and defined, on considerations of general public policy, and parties cannot be suffered of their own discretion to modify and enlarge these limits. Therefore, where a court by law has no authority to take cognizance of a particular subject-matter in controversy, if it shall proceed to do so either party to the controversy may repudiate its action at any stage of the proceedings, and refuse to be bound by them; and his previous consent to them, however formal, can never be an impediment to his rejecting them.[2] This is the conclusive reason why divorces obtained collusively by citizens of one State in the tribunals of another, are wholly inoperative and null; for no court of one State can take cognizance of the domestic relations of another with a view to their dissolution.[3]

Jurisdiction of the persons of litigants is acquired by courts in the following ways:— 1. Of the plaintiff, by his

---

[1] Mordecai v. Lindsay, 19 How. 199; Montgomery v. Anderson, 21 How. 386; Coffin v. Tracy, 3 Caines (N. Y.), 128; Preston v. Boston, 12 Pick. (Mass.) 7; Green v. Collins, 6 Ired. (N. C.) 139.
[2] Bostwick v. Perkins, 4 Ga. 47; Ginn v. Rogers, 9 Ill. 131; White v. Buchanan, 6 Cold. (Tenn.) 32.
[3] Cheever v. Wilson, 9 Wall. 108; Hoffman v. Hoffman, 46 N. Y. 30; People v. Dawell, 25 Mich. 247; Leith v. Leith, 39 N. H. 20. See Cooley, Const. Lim., 6th ed., pp. 494-5, and cases.

voluntary institution of suit; and, 2. Of the defendant, by his being served with legal process at the commencement of suit, or by his voluntary appearance in suit without process, or after irregular service of process. This jurisdiction may always be given to courts by consent of the party, provided the subject-matter of the controversy is within their jurisdiction.

Some cases are said to proceed *in rem*, because the process which begins them is served upon the thing which is the subject of controversy, instead of upon parties, and the pleadings and other proceedings take notice of the thing in litigation, and not of those interested in it. The law or the practice of the court may require notice to be given in some form to the parties concerned before final judgment, but the jurisdiction is obtained by the original seizure or service.

*Irregularities in Judicial Action.* — When a court has acquired jurisdiction, it may nevertheless exercise it irregularly. An irregularity consists in the failure to observe that particular course of proceeding which, conformably to the practice of the court, ought to have been observed in the case. It is a general rule that, while a want of jurisdiction renders the proceedings of a court void, an irregularity only subjects them to be avoided on a direct proceeding instituted for the purpose.[1] The proper proceeding is either, — 1. An application to the court in which the irregularity occurred, to set aside all action based upon or affected by it; or, 2. The removal of the case to some appellate court or jurisdiction for the correction of the error as right and justice may require. But an irregular step cannot be taken advantage of in a collateral proceeding, but must be taken to be valid, while a want of jurisdiction may always be inquired into, and the enforcement of a judgment obtained without jurisdiction can never be due process of law.

---

[1] White v. Crow, 110 U. S. 183; Weise v. Guerineau, 109 Ind. 438; Levan v. Millholland, 114 Penn. St. 49.

*Divesting Rights by Legislation.* — The legislature makes the laws, but cannot pass judgments or decrees, or make a law that is such in substance.[1] It must "govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plough."[2] Nevertheless the general laws of the State may make different regulations for different kinds of business, and prescribe different rules for the different classes of people who compose the State. The rules of civil capacity and criminal responsibility are justly and properly made for different classes of people; for minors and adults, for males and females, for the sound in mind and the insane, for those engaged in hazardous employments and those who are not, and so on. If an employment is one which concerns the general public, and requires for its proper usefulness that it should have the unhesitating confidence of the public, — as in the cases of bankers and carriers of passengers, — it may be proper that special and even severe regulations be established to prevent the confidence being abused, and to insure that the public reliance shall be justified. To compel the observance of these under penalties is neither unjust nor unconstitutional.

*Vested Rights.* — The test of unlawful interference with property is that vested rights are abridged or taken away. Rights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest.[3] They are expectant, when they depend upon the continued existence of a present condition of things until the happening of some future event. They are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.

*Rights in Expectancy.* — The man who to-day erects buildings and puts in them machinery for the manufacture of some important article of common consumption, on the importation of which the law imposes a tariff duty which is practically prohibitory, may expect that this will continue in force, and that he will in consequence reap large profits from his manufactory. But he has no vested right in the general laws of his country which entitles him to insist that any one of them shall remain unchanged for his benefit;[1] and if the duty shall be removed, and his property rendered worthless in consequence, he is nevertheless deprived of no right. All statutory privileges depend upon this principle, and they may be taken away by changes in the general laws at any time. The privilege of exemption from arrest, exemption from taxation, exemption of property from forced sale on execution, and exemption from jury duty, are all within the principle. Even an exemption from military duty, granted by the law after full performance of duty for some previously fixed period, may be withdrawn when the exigencies of the State appear to require it.[2]

So the rules of descent may be changed in the legislative discretion, though thereby the expectations of living persons under the previous laws are disappointed. The living sons who have no heirs, and the laws which provide who shall be their heirs in the event of their death are only expressive

---

[1] Tyson v. School Directors, 51 Penn. St. 9; Gaines v. Buford, 1 Dana (Ky.), 481.
[2] Locke on Civil Government, § 142; Griffin v. Cunningham, 20 Gratt. (Va.) 31.
[3] For example, as to public lands, a purchaser has no vested interest till he has done everything required by law to be done by him to complete his title. Campbell v. Wade, 132 U. S. 34.

[1] "A person has no property, no vested interest, in any rule of the common law. . . . Rights of property, which have been created by the common law, cannot be taken away without due process; but the law itself as a rule of conduct may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations." — Munn v. Illinois, 94 U. S. 113, 184. Brooks, 34 Ga. 67; Murphy v. People, 37 Ill. 447; State v. Wright, 53 Me. 328.
[2] Commonwealth v. Bird, 12 Mass. 443; Swindle v. Wright, 53 Me. 328.

of present views of what is best, and may be changed as these views change; and no vested rights can be impaired, since no rights under these laws can vest while the owner of the estate is living. The expectation is not property; it cannot be sold or mortgaged; it is not subject to debts; and it is not in any manner taken notice of by the law until the moment of the owner's death, when the statute of descents as it then exists comes in, and for reasons of general public policy passes the estate to persons standing in certain degrees of relationship to the deceased, in preference to all others. It is not until that moment that there is any vested right in the person who becomes heir.[1]

So qualities annexed to estates, and to effect their enjoyment in the future, may be changed when the interests of the owners are not rendered less beneficial. Estates tail may be changed into estates in fee simple, estates in joint tenancy into estates in common.[2] So the expectant right of the husband to an estate by the curtesy in his wife's lands may be taken away by general legislation at any time before it has become initiate by the birth of living issue of the marriage,[3] and the expectant right of the wife to dower in her husband's lands at any time before it has passed from the condition of expectancy and become perfected by the husband's death.[4] The marriage gives no vested right in either of these cases.

*Trust Interests.* — Where one holds property for another, the vested right which the law regards is not that of the trustee, but of the beneficiary. It is a perfectly legitimate exercise of legislative power to convert equitable estates into legal, thereby wholly divesting the trustee of his legal ownership. The Statute of Uses[5] had this

---

[1] Cooley, Const. Lim., 6th ed., 439.
[2] Holbrook v. Finney, 4 Mass. 465; Burghardt v. Turner, 12 Pick. (Mass.) 534. See Comstock v. Gay, 51 Conn. 45.
[3] Breeding v. Davis, 77 Va. 639; Hathon v. Lyon, 2 Mich. 93.
[4] Lucas v. Sawyer, 17 Iowa, 517; Noel v. Ewing, 9 Ind. 37; Pratt v. Tefft, 14 Mich. 191; Westervelt v. Gregg, 12 N. Y. 202.
[5] Stat. 27 Hen. VIII. c. 10.

---

for its main purpose, and its general features have been re-enacted in many States of the Union, and recognized by judicial decision in others. Trusts arising by construction of law to prevent frauds are subject to a like legislative control, but with this limitation: that, as the legislature cannot adjudge that a fraud has been committed, the supposed trustee, if he claims the property, must have a right to a judicial hearing upon his claim before he can be dispossessed. And as between those who claim adversely as beneficiaries the legislature can never decide, but they must be left to litigate their conflicting claims in the courts.[1]

*Curative Laws.* — One method in which beneficial interests are protected by legislation is by a retrospective correction of errors and defects in conveyances. A leading case on the subject was one in which a statute was passed to validate certain leases of land which under previous judicial decisions had been declared inoperative. By the express terms of the statute it was made applicable to pending suits in which contracts of leasing might come in question. It was sustained as undoubtedly valid, though it was contested as a law impairing the obligation of contracts.[2] Manifestly, it had no such effect as was pretended; it rather imported into the contract an obligation which the parties had attempted, but failed, to incorporate in it. And this is the principle on which all such laws may be sustained; they merely give legal validity to what the parties have attempted to accomplish; converting their invalid agreements into the valid conveyances which they undertook to make. Presumptively, therefore, these laws further the intent the parties had in view.

It may happen that the grantor in the invalid conveyance, when he finds the title has not been transferred, may desire to take advantage of the invalidity, and may insist

---

[1] Cash, Appellant, 6 Mich. 193; Lane v. Dorman, 4 Ill. 238.
[2] Satterlee v. Mathewson, 16 S. & R. (Penn.) 169; s. c. in error, 2 Pet. 380.

that he has a vested right which the legislature cannot take away. But obviously he has in such a case no equitable right. In equity he is considered as holding for the benefit of the party to whom he undertook to convey; and, as has been well said, "Courts do not regard rights as vested contrary to the justice and equity of the case."[1]

This principle has been applied to the conveyances of married women, and they have been validated retrospectively, though they were so entirely void in their origin that they did not constitute even a contract, or raise an equity which could be taken notice of judicially.[2] The woman has no right to complain if the law which prescribed forms for her protection shall interfere when justice demands it, to preclude her taking advantage of an imperfection in her own act.[3]

If, however, the grantor in the invalid conveyance shall subsequently convey in due form of law to a *bona fide* purchaser, the previous deed cannot afterwards be corrected to his prejudice. The reason is, that he has equities equal to those of the first purchaser, and having connected the legal title with these, his right, according to well-settled rules of the courts of equity, has become unassailable.[4] And if the defective conveyance was one which for any other reason was inoperative; as where the grantor assumed to convey by it contrary to conditions or qualifications which, for the benefit of others, were imposed upon his title, or in fraud of the rights of others whose representative or agent he was, it is not in the power of the legislature to validate it retrospectively, since validating it

---

[1] State v. Newark, 27 N. J. 185, 197; Foster v. Essex Bank, 16 Mass. 245; Brown v. New York, 63 N. Y. 239; Chestnut v. Shane's Lessee, 16 Ohio, 599; Read v. Plattsmouth, 107 U. S. 568. See Gross v. United States M'tg'e Co., 108 U. S. 477.

[2] Watson v. Mercer, 8 Pet. 88; Underwood v. Lilly, 10 S. & R. (Penn.) 97; Deutzel v. Waldie, 30 Cal. 138.

[3] Goshorn v. Purcell, 11 Ohio St. 641.

[4] Brinton v. Seevers, 12 Iowa, 389; Le Bois v. Bramel, 4 How. 449; Sherwood v. Fleming, 25 Texas, 408 (Supplement).

would divest equities instead of perfecting them.[1] An invalid will, or trust in a will, can never be helped after the testator's death, for the obvious reason that titles vest under it immediately.[2]

The defects in conveyances and contracts which render them inoperative arise from two causes:— 1. Defect in legal capacity in the party making them; 2. Failure to observe some legal formality in their execution. The former may arise from nonage, coverture, or guardianship, or it may be a defect of intelligent will. The disabilities which are imposed by the law itself may be removed or modified by a change in the law. The same is true of legal formalities: the statute establishes what are deemed important, and the statute may dispense with them. And the general rule is this: it is competent for the legislature to give retrospectively the capacity it might have given in advance, and to dispense retrospectively with any formality it might have dispensed with in advance.[3] But it can never, either prospectively or retrospectively, dispense with the act of assent, and therefore cannot validate the deed of an insane person.[4]

The power to correct applies to all classes of contracts. A marriage defective in formalities of execution may be validated retrospectively;[5] so may notes and bills issued by a corporation on which the power has not been conferred by its charter;[6] so may negotiable paper which is wholly or in part void for usury.[7] It is not an uncommon

---

[1] Shonk v. Brown, 61 Penn. St. 320.

[2] Hilliard v. Miller, 10 Penn. St. 326; Greenough v. Greenough, 11 Penn. St. 489; Alter's Appeal, 67 Penn. St. 341; State v. Warren, 28 Md. 338.

[3] Single v. Supervisors of Marathon, 38 Wis. 363.

[4] Routsong v. Wolf, 35 Mo. 174.

[5] Geshen v. Stonington, 4 Conn. 209.

[6] Lewis v. McElvain, 16 Ohio, 347; Trustees v. McGaughy, 2 Ohio St. 152.

[7] Savings Bank v. Allen, 28 Conn. 97; Thompson v. Morgan, 6 Minn. 292; Parmelee v. Lawrence, 48 Ill. 331; Woodruff v. Scruggs, 27 Ark. 26.

exercise of legislative power to validate the imperfect contracts of municipal corporations, whether the defect consists in a want of original power in the corporation to do what was attempted, or in neglect of proper formalities in entering into them.[1]

*Curing Defects in Judicial Proceedings.* — It is a well-settled principle that the legislature can never, by retrospective proceedings, cure a defect of jurisdiction in the proceedings of courts. The reason is manifest. Such proceedings being utterly void, they would acquire vitality as judicial acts, if at all, by the legislative act exclusively, and the curative act must therefore be in its nature a judgment.[2] But mere irregularities in judicial proceedings may always be cured retrospectively. A leading case was where a sale in a partition case was ineffectual, because the purchase was made by several, and the deed was so made to one only. But it appeared that the deed was so made by mutual agreement of all, for convenience in making subsequent sales and conveyances, and a healing statute was consequently in furtherance of justice, and unobjectionable.[3] So execution sales have been validated where the defect consisted in an overcharge of officer's fees on the execution,[4] and sales by executors and guardians where various irregularities existed not affecting the substantial interests of the parties concerned.[5] Indeed, it is not uncommon to provide by general law that certain

---

[1] Booth v. Woodbury, 32 Conn. 118; Crowell v. Hopkinton, 45 N. H. 9; Ahl v. Gleim, 52 Penn. St. 432; State v. Demorest, 32 N. J. 528; Coffman v. Keightley, 24 Ind. 509; Mills v. Charlton, 29 Wis. 400; Morris v. State, 62 Tex. 728. See Mattingly v. District of Columbia, 97 U. S. 687; Strosser v. Fort Wayne, 100 Ind. 443.

[2] McDaniel v. Correll, 19 Ill. 220; Denny v. Mattoon, 2 Allen, 361; State v. Doherty, 60 Me. 504. A legislative act cannot authorize courts to change the effect of decrees which have become final. Roche v. Waters, 72 Md. 264.

[3] Kearney v. Taylor, 15 How. 494. See Boyce v. Sinclair, 3 Bush (Ky.), 261.

[4] Beach v. Walker, 6 Conn. 190.

[5] Davis v. State Bank, 7 Ind. 316; Lucas v. Tucker, 17 Ind. 41.

---

specified defects and irregularities occurring in such sales shall not affect them; and the right to enact such a law is undoubted.[1]

*Administrative Proceedings.* — The same principle applies in all administrative proceedings. For example, irregular proceedings in taxation may be made good retrospectively,[2] but subject to this limitation, that there must originally have been in the officers jurisdiction to impose the levy; and they must have made it in accordance with the general principles which underlie the power to tax.[3] An instance of the failure to observe these principles would be a levy without an apportionment among the subjects taxed; an arbitrary levy being no tax at all. And a tax sale effected by fraud is incapable of confirmation.[4] Defects in execution or mortgage sales, or in the execution of any statutory power, may be cured under the same rules.[5] And so may irregularities in the proceedings of public and private corporations.[6]

*Rights of Action.* — It is not competent by legislation to bring into existence and establish against a party a demand which previously he was neither legally nor equitably bound to recognize and satisfy.[7] On the other hand,

---

[1] Toll v. Wright, 37 Mich. 93. This whole matter of Retroactive Laws is fully and carefully examined in Mr Wade's treatise on that subject.

[2] Butler v. Toledo, 5 Ohio St. 225; Iowa, &c. Co. v. Soper, 39 Iowa, 112; Astor v. New York, 62 N. Y. 580; Sturges v. Carter, 114 U. S. 511.

[3] People v. Lynch, 51 Cal. 15; Houseman v. Kent Circuit Judge, 58 Mich. 364.

[4] Conway v. Cable, 37 Ill. 82.

[5] Allen v. Archer, 49 Me. 346; Commonwealth v. Marshall, 69 Penn. St. 328.

[6] Thompson v. Lee County, 3 Wall. 327; Mitchell v. Deeds, 49 Ill. 416; State v. Guttenburg, 38 N. J. 419.

[7] Medford v. Learned, 16 Mass. 215; Albertson v. Landon, 42 Conn. 209; People v. Supervisors, 43 N Y. 130; Ohio, &c. R. R. Co. v. Lackey, 78 Ill. 55; Cottrel v. Union Pac. Ry. Co., 21 Pac. Rep 416 (Idaho); Miller v. Dunn, 72 Cal 462.

340        CONSTITUTIONAL LAW.

it is not competent for the legislature to deprive a party of a right of action accruing to him under the rules of the common law, or in accordance with its principles. Therefore the right to redress for illegal arrests cannot be taken away;[1] neither can the right to recover back taxes illegally exacted,[2] nor the right to have a void tax-sale set aside.[3] Nor can conditions to the exercise of the right be imposed, which are of a nature to render it practically of no value.[4] But an action for a forfeiture, given by and depending on statute, will be gone if, before recovery, the statute is repealed without expressly saving it.[5]

A statute of limitation takes away no right of property. Such a statute prescribes a reasonable time within which a party claiming legal rights which another withholds shall commence legal proceedings for their enforcement, and it withdraws the privilege of suing if the time is suffered to elapse without action.[6] This is a proper and reasonable regulation of a right; not a denial of it.[7] And when the time limited by the statute has been suffered to elapse without suit, so that the right of action is gone, it is not competent to revive it by retrospective legislation, since this would be equivalent to creating a new demand.[8] But

---

[1] Johnson v. Jones, 44 Ill. 142, Griffin v Wilcox, 21 Ind. 370.
[2] Hubbard v Brainerd, 35 Conn. 563.
[3] Wilson v McKenna, 52 Ill 43.
[4] McFarland v. Butler, 8 Minn. 116; Wilson v. McKenna, 52 Ill. 43; Lassitter v Lee, 68 Ala 287. Compare Coats v. Hill, 41 Ark. 149.
[5] Ante, p. 326; Miller v. White, 50 N. Y. 139; Breitung v. Lindauer, 37 Mich. 217.
[6] Bell v. Morrison, 1 Pet. 351; Koshkonong v. Burton, 104 U. S. 668.
[7] Bell v. Morrison, 1 Pet. 351; Wheeler v. Jackson, 137 U S. 245; State v. Jones, 21 Md. 432; Pitman v. Bump, 5 Oreg. 17.
[8] Brent v Chapman, 5 Cranch, 358; Lockhart v. Horn, 1 Woods, 628; Reformed Church v. Schoolcraft, 65 N. Y. 134; Atkinson v. Dunlap, 50 Me. 111; Yancy v. Yancy, 5 Heisk. 353; Thompson v. Reid, 41 Iowa, 48; Rockport v. Walden, 54 N H. 167; Hicks v. Steigleman, 49 Miss. 377; Horbach v. Miller, 4 Neb. 31; Bradford v. Shine, 13 Fla. 393. In Campbell v Holt, 115 U. S. 620, it is held that

---

PROTECTION TO CONTRACTS AND PROPERTY.    341

all limitation acts must allow to claimants a reasonable opportunity to assert their rights in court, and one entirely and manifestly unreasonable in the time it gives is void.[1]

It is a rule of construction that a statute of limitation does not apply to suits instituted by the State itself, unless it is so provided in express terms.[2] And state statutes cannot limit suits by the United States.[3]

*Remedies.*— The power to provide remedies for all civil wrongs, and to change them when found ineffectual, or when others shall promise to be more effectual, is and must be continuous. The citizen has no vested right to any particular remedy, and the State may therefore take away at discretion those it provides, and substitute others which shall apply to wrongs already committed as well as to those which may be committed thereafter.[4] The exceptions to this general statement are, that the remedy given must be one which recognizes and gives effect to the obligation of the contract when the wrong grows out of non-performance of contract,[5] and it must in any case be a remedy calculated to give redress, and not merely colorable.[6] A judgment for a tort, not being based upon the assent of parties, is not a contract, and the means of enforcing such a judgment may be taken away entirely.[7] And no right in there is a distinction between property adversely held and a promise to pay a debt; that one has no property in the bar of the statute as a defence to the promise, but that the repeal revives the right to recover against him on his agreement.

---

[1] Pereles v. Watertown, 6 Biss. 79; Hart v. Bostwick, 14 Fla. 162; Berry v. Ramsdell, 4 Met. (Ky.) 292; Ludwig v. Steward, 32 Mich. 27
[2] Gibson v. Chouteau, 13 Wall. 92.
[3] United States v. Hoar, 2 Mason, 311.
[4] Railroad Co. v. Hecht, 95 U. S. 168; Tennessee v. Sneed, 96 U. S. 69
[5] McCracken v. Hayward, 2 How. 608; Guntley's Lessee v. Ewing, 3 How. 707; Bronson v. Kinzie, 1 How 311.
[6] Oatman v. Bond, 15 Wis. 20; Walker v. Whitehead, 16 Wall. 314.
[7] Louisiana v. New Orleans, 109 U. S. 285; Freeland v Williams, 131 U. S. 405.

property is violated, and no wrong done, when a new or additional remedy is given for a right or equity previously in existence, and not sufficiently provided for before. This often becomes important to the accomplishment of effectual justice.[1]

An alteration in the rules of evidence is often one of the most serious modifications of remedies; but the power in the legislature to make it is undoubted, and the changes may be made to apply in the investigation of causes of action previously accruing.[2] So the burden of proof may be changed from one party to the other by legislation; as has often been done by statutes which make a deed given on the sale of lands for taxes *prima facie* evidence of a complete title in the grantee, whereas before such statutes the grantee would be compelled to make out his *prima facie* case by showing that the proceedings anterior to and upon the sale were regular.[3] The statutes making defective records of conveyances evidence, notwithstanding the defects, is a further illustration of legislative power in this regard.[4] Such laws presumptively wrong no one. They provide such method of investigating the truth as seems likely to be most effectual and just for the particular cases mentioned, and they preclude no one from establishing his rights. A statute which should undertake to establish conclusive rules of evidence, whereby a party might be excluded from any opportunity to show the facts, on the affirmative presentation of his adversary's case, would be nothing short of a statute of confiscation, and manifestly

---

[1] Hope v. Johnson, 2 Yerg. (Tenn.) 123; Danville v. Pace, 25 Grat. (Va.) 1, Bartlett v. Lang, 2 Ala. (N. S.) 401; Chaffe v. Aaron, 62 Miss. 29; Schoenheit v. Nelson, 16 Neb. 285.

[2] Ogden v. Saunders, 12 Wheat. 213, 249; Webb v. Den, 17 How. 577; Rich v. Flanders, 39 N. H. 304; Gibbs v. Gale, 7 Md. 76.

[3] Sprague v. Pitt, McCahon (Kans.), 212; Callanan v. Hurley, 93 U. S. 387; Hand v. Ballou, 12 N. Y. 541. So this rule when established may be abolished as to existing deeds. Gage v. Caraher, 125 Ill. 447; Strode v. Washer, 17 Oreg. 50.

[4] Webb v. Den, 17 How. 577.

in violation of constitutional right.[1] In saying this we except all those cases to which the principle of estoppel may be justly applied; that principle being that a party shall be precluded from showing a state of facts differing from that which by his own conduct or assurances he has induced another to believe in and act upon, when the effect would be to deceive and defraud the party so acting. This is a valuable and just principle recognized by the common law and in equity.

*Betterment Laws.* — Those laws which charge a man's land with a lien in favor of one who, while holding it adversely in good faith, has expended his money in improvements upon it, seem at first view to be laws creating demands for the improvement of one's lands against his will; but as they only recognize an equity to the payment for benefits which he must appropriate when he recovers his land, they are not unjust and not unconstitutional.[2] All such laws give the owner the option to pay for the improvements and take the land, or to abandon the land to the occupant, and recover its value without the improvements; which is as much as in justice he can claim. It would not be competent to make him personally liable for the improvements.[3]

*Sales for Taxes.* — Taxes may always be levied through administrative proceedings, the assessors exercising *quasi* judicial authority in so doing. This is due process of law for such cases.[4] The collection of taxes may be enforced by suits, by sale of property, or by forfeiture for non-payment or for attempts to evade the law. Where the tax is a personal or property tax, it is most commonly collected

---

[1] Wright v. Cradlebaugh, 3 Nev. 341; Groesbeck v. Seeley, 13 Mich. 329; East Kingston v. Towle, 48 N. H. 57.

[2] Whitney v. Richardson, 31 Vt. 300; Ross v. Irving, 14 Ill. 171.

[3] Childs v. Shower, 18 Iowa, 261; McCoy v. Grandy, 3 Ohio St. 463.

[4] Cruikshanks v. Charleston, 1 McCord (N. C.), 360; Weimer v Bunbury, 30 Mich. 201, 212; Davidson v. New Orleans, 96 U. S. 97; Hagar v. Reclamation Dist., 111 U. S. 701.

by means of a seizure and sale of property. The general rule is, that in proceedings for this purpose the officers must follow the law with some strictness, and comply with all those provisions which are enacted for the protection of the person taxed.[1] For the collection of imposts and excise taxes the United States has always made provision under which forfeitures may be imposed for evasions of the law. The forfeitures sometimes extend, not merely to the property or thing in respect to which the tax is imposed, but to the building or ship which has been made the instrument of accomplishing the fraud upon the revenue. Forfeitures are judicially declared, and, as they accrue at the time when the illegal act was committed, it is held that the judgment relates back to that time, and will cut off the right of a subsequent *bona fide* purchaser.[2]

SECTION III. — THE EMINENT DOMAIN.

*The Constitution.* — In the fifth amendment to the Constitution, the fact is recognized that in some cases the necessities of the government must override the rights of private ownership, and compel the surrender of specific private property to the public use. To prevent oppression in such cases, it is provided that private property shall not be taken for public use without just compensation. This is a declaration of the underlying principle of the law of eminent domain.

*Definition.* — The eminent domain may be defined as the lawful authority which exists in every sovereignty to control and regulate those rights of a public nature which pertain to its citizens in common, and to appropriate and control individual property for the public benefit, as the public safety, necessity, convenience, or welfare may demand. The most important of these public rights consist

---

[1] Stead v. Course, 4 Cranch, 403; Williams v. Peyton, 4 Wheat. 77
[2] Henderson's Distilled Spirits, 14 Wall. 44. See United States v. The Reindeer, 2 Cliff. 57.

---

in the use of the public highways, by land or by water, and to participate in the public fisheries. Highways and other public conveniences, however, must be provided by the State in the exercise of the eminent domain; and as the legal controversies respecting its principles usually arise in connection with appropriations for these purposes, the right itself is often spoken of and treated as if it were restricted to such cases.

*State and Nation.* — As between the United States and the several States, the regulation and protection of private rights, privileges, and immunities belongs primarily to the States, and the States are expected to make provision for the conveniences and necessities of public travel, and for the other wants of the general public, or of the State itself, which are commonly supplied under this right. The eminent domain, therefore, pertains in general to the States, not to the United States. Nevertheless, for all national purposes it is in the United States, and the government may exercise the power of appropriation as an attribute of the national sovereignty.[1] And Congress may give a railroad company created under a State law the right to exercise the power of eminent domain in a Territory.[2] In the Territories the general right belongs to the United States, but it is within the ordinary compass of territorial legislative power to exercise it for local purposes. When the Territory is admitted into the Union as a State, the right passes with all its incidents to the new sovereignty.[3] Among these incidents is the right to the sea-shore below the line of private ownership.[4]

*Legislation essential.* — But although the right is inherent in sovereignty, it lies dormant until legislation is had,

---

[1] Kohl v. United States, 91 U. S. 367; Cherokee Nation v. Sou. Kans. Ry. Co., 135 U. S. 641. The United States may delegate to a state tribunal the power to ascertain the compensation to be paid for the property appropriated. United States v. Jones, 109 U. S. 513.
[2] Cherokee Nation v. Sou. Kans. Ry. Co., 135 U. S. 641.
[3] Weber v. Harbor Commissioners, 18 Wall. 57.
[4] Pollard's Lessee v. Hagan, 3 How. 212.