# APPENDIX 1

18 N.J. 584

**JERSEY CITY, a municipal corporation, Plaintiff-Appellant,**

**v.**

**Frank HAGUE, Defendant-Respondent,**

**and**

**Frank Hague EGGERS et al., Defendants.**

**No. A-137.**

Supreme Court of New Jersey.

Argued April 25, 1955.

Decided June 13, 1955.

Action by city against former city officials to recover money allegedly extorted from city employees. The Hudson County Court sustained motion to dismiss, plaintiff appealed to Appellate Division, and case was certified on motion of Supreme Court. The Supreme Court, Vanderbilt, C. J., held that city was proper party plaintiff to recover from former city officials money which officials allegedly had extorted from city employees as condition to obtaining or retaining employment.

Order reversed and cause remanded.

Heher, Oliphant and Wachenfeld, JJ., dissented.

**1. Pleading ⇨34(3)**

On an attack on a complaint, all facts and all reasonable inferences and implications therefrom are to be considered most strongly in favor of plaintiff.

**2. Money Received ⇨1**

Restitution, by virtue of its adaptability to individual cases on equitable principles, may reach situations beyond grasp of other civil or criminal remedies and do justice on equitable principles.

**3. Municipal Corporations ⇨1016**

City had power to bring suit for recovery of property allegedly wrongfully taken from it by defendant, in same manner as natural persons.

**4. Municipal Corporations ⇨170**

City was real party in interest in action to recover from former city officials money allegedly wrongfully taken from city by means of extortion worked upon city employees. R.R. 4:30-1.

**5. Municipal Corporations ⇨170**

Complaint by city to recover property wrongfully taken from it by former city officials through extortion worked upon city employees sufficiently described the method used to obtain money. R.R. 4:9-1.

**6. Pleading ⇨20**

To sustain complaint which asserts alternative claims it is only necessary that it set forth at least one sufficient claim. R.R. 4:8-5(b).

**7. Trusts ⇨371(2)**

City's complaint which alleged that it had been unlawful for city employees to pay consideration to defendants for obtaining or holding city employment, and that all such money extorted by defendants was subject to be forfeited to city for its own use and benefit, or as trustee for use and benefit of employees, stated cause of action on theory of constructive trust.

**8. Appeal and Error ⇨837(1)**

Allegations urged at oral argument but not contained in complaint were not before Supreme Court on appeal from dismissal of complaint.

**9. Municipal Corporations ⇨1016**

Municipality had power to sue to enforce a constructive trust without specific legislative authorization.

**10. Municipal Corporations ⇨170**

City was proper party plaintiff to recover from former city officials money which officials allegedly had extorted from city employees as condition to obtaining or retaining employment. R.R. 4:8-5(b), 4:30-1; Const.1947, Art. IV, § VII, par. 11; R.S. 40:43-1, N.J.S.A.

**11. Trusts ⇨160(2)**

A trust will not fail f
tee, and equity has power
tee if necessary.

**12. Pleading ⇨48**

However liberal plea
quirement still remains
of a substantive ground
set forth, albeit informall
4:8-5(b), 4:8-6, 4:9-3,

**13. Pleading ⇨229**

Broad power of amer
plated by rules at any sta
and is permitted except
party prejudiced thereby
be forbidden. R.R. 4:15-

**14. Pleading ⇨1**

Under a modern sy
achievement of substan
fundamental consideratio

**15. Action ⇨53(1)**

**Pleading ⇨16, 20, 53(1**

Parties must join a
troversy so that they m
and settled without mult
and inconsistent, hypothe
claims or demands are n
demned.

**16. Pleading ⇨53(1), 93(1**

The new rules permi
than existed under old pr
claims or defenses, incor
either law or fact. R.R.
4:8-6, 4:9-3 4:15-1.

**17. Pleading ⇨53(1), 93(1**

The purpose of gr
pleading claims or defen
point of either law or
pleader from being fore
ing any rights to which
be entitled, until true f
are known.

**18. Pleading ⇨53(2)**

That city's complai
former city officials m

**11. Trusts ⟹160(2)**

A trust will not fail for want of a trustee, and equity has power to provide a trustee if necessary.

**12. Pleading ⟹48**

However liberal pleadings may be, requirement still remains that at least gist of a substantive ground of relief must be set forth, albeit informally. R.R. 4:8-1(b), 4:8-5(b), 4:8-6, 4:9-3, 4:15-1.

**13. Pleading ⟹229**

Broad power of amendment is contemplated by rules at any stage of proceedings, and is permitted except when justice to a party prejudiced thereby requires that it be forbidden. R.R. 4:15-1.

**14. Pleading ⟹1**

Under a modern system of pleading, achievement of substantial justice is a fundamental consideration.

**15. Action ⟹53(1)**

**Pleading ⟹16, 20, 53(1)**

Parties must join all matters in controversy so that they may be disposed of and settled without multiplicity of actions, and inconsistent, hypothetical or alternative claims or demands are not necessarily condemned.

**16. Pleading ⟹53(1), 93(1)**

The new rules permit greater liberality than existed under old practice for pleading claims or defenses, inconsistent in point of either law or fact. R.R. 4:8-1(b), 4:8-5(b), 4:8-6, 4:9-3 4:15-1.

**17. Pleading ⟹53(1), 93(1)**

The purpose of greater liberality in pleading claims or defenses, inconsistent in point of either law or fact, is to prevent pleader from being foreclosed from asserting any rights to which he may perchance be entitled, until true facts on both sides are known.

**18. Pleading ⟹53(2)**

That city's complaint to recover from former city officials money allegedly extorted from city employees as condition to obtaining or retaining employment sought to recover both for city and for employees did not render complaint bad as inconsistent. R.R. 4:8-1(a, b), 4:8-5(b), 4:8-6, 4:9-1, 4:9-3, 4:15-1, 4:30-1; R.S. 40:43-1, N.J.S.A.; Const.1947, Art. IV, § VII, par. 11.

---

Mortimer Neuman, Jersey City, for appellant (John B. Graf, Corp. Counsel, Jersey City).

Thomas McNulty, Jersey City, for respondent, Frank Hague (Milton, McNulty & Augelli, Jersey City, attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J.

Defendant Frank Hague moved, without supporting affidavit, to dismiss the complaint "for failure to state a claim upon which relief can be granted" and the trial court granted the motion. The plaintiff appealed to the Appellate Division of the Superior Court and we certified the case on our own motion while it was pending there.

I. The Facts of the Complaint.

[1] No principle of pleading is better established, not only under our rules of court but under the practice that preceded it, Kelly v. Hoffman, 137 N.J.L. 695, 61 A.2d 143, 5 A.L.R.2d 951 (E. & A.1948), 41 Am.Jur., Pleading, § 336, that on an attack on a complaint all the facts and all the reasonable inferences and implications therefrom are to be considered most strongly in favor of the plaintiff since the remedy sought by the defendant is a drastic one. It is with this necessary principle in mind that the complaint is to be read.

The first count of the complaint alleges that (1) the plaintiff is a municipal corporation; (2) the defendant Frank Hague was mayor of Jersey City from 1917 to 1947; (3) the defendant Frank Hague Eggers was mayor from 1947 to 1949 and a member of the board of commissioners from 1942 to 1949; (4) the defendant John

F. Malone was deputy mayor from 1917 to 1949, and

"5. The defendants Hague, Eggers and Malone were political associates, and close political confederates and collaborators, and closely associated together in the government of the City of Jersey City continuously for at least twenty-five years prior to May 17, 1949.

"6. From May 15, 1917 to May 17, 1949, the defendants acting at times singly and at other times in combination with each other, in their capacities as individuals and as officials of the plaintiff City, did steal and did unlawfully, fraudulently, corruptly and with gross breach of trust, extort and appropriate to themselves property of the City, to wit, money, in the amount of not less than fifteen million dollars ($15,000,000.). The said thefts and defrauds of moneys of the City were accomplished by the means of the extortion from employees of the City of three percent (3%) of the annual salary of each said employee during each year from 1917 to 1949 as aforesaid. The said thefts, defrauds, and extortions were committed in such manner and at such times as to have constituted, in law, thefts, defrauds and extortions from the city payroll funds, which were the property of the City, in that the three percent of salary of each city employee was extorted by threats and force by the defendants from the said city employees on a systematic annual basis, and was made payable to and was taken by the defendants directly out of the salary moneys paid or payable by the City to the said employees for services. The systematic basis on which the said thefts, defrauds and extortions were organized and carried out by the defendants, amounted in law to an unlawful charge upon, and theft, defraud and extortion from, the City's treasury and budgeted appropriations for each such year, in the amount of three percent of city treasury funds and budgeted appropriations set aside or held or appropriated for salaries of City employees."

The second count of the complaint repeats the allegations of the first six paragraphs of the first count of the complaint and then states:

"2. Under the laws of New Jersey and the ordinances and resolutions of the City of Jersey City in force during the period May 15, 1917 to May 17, 1949, it was unlawful for any paid employee of the City of Jersey City to give or pay to any person any money or other valuable consideration by way of bribe, 'Kick-back' or otherwise as a condition of obtaining or holding such City employment or of obtaining City funds as salary therefor. All such moneys extorted by the defendants from City employees under defendants' three percent extortion scheme were and are subject to be forfeited to the City for its own use and benefit, or as trustee for the use and benefit of the defrauded employees (or their heirs and administrators) from whom such moneys were extorted. Defendants are required to forfeit all such moneys to plaintiff, in the amount of $15,000,000. as aforesaid."

The complaint then concludes:

"Wherefore, plaintiff demands judgment against the defendants, jointly and severally, in the amount of $15,000,000. plus interest; and for the impressment of a trust in the amount of $15,000,000. plus interest, upon the property and assets of the defendants for the use and benefit of the plaintiff as beneficiary, or in the name of plaintiff as trustee for the use and benefit of all employees (or their heirs and administrators) of the plaintiff from whom the defendants extorted payroll percentage amounts as alleged herein; and for the costs of this suit; and for such other relief as may be just, equitable and proper."

The complaint will be examined first with respect to the substantive law and then in its procedural aspects.

II. The Subst
plaint.

The complaint
defendants by fo
tions systematical
ployees of the pla
their official incor
condition of the
tinued employmen
for their own use.
before us is wheth
in law to do this.

We do not ha
answer. In Dris
Bridge Co., 8 N.J
86 A.2d 201, at p
said without disse

"The member
freeholders and
sion are public o
of public trust.
ciary relationsh
they have beer
to serve. Rank
tion, 135 N.J.L.
(E. & A.1947);
441, 88 U.S. 441
(1875); Edwarc
141 N.C. 60, 5
R.A.,N.S., 589 (
Smith, 130 Me.
73 A.L.R. 1344
ex rel. Fletcher
418, 239 N.W.
(Sup.1931); In
326, 69 A.2d 61
Am.Jur., Public
43 Id. § 260, p.
cers, § 6, p. 11
trustees of the
under an inescap
the public with t
discharging the
they are require
telligence and sk
of, to be diligent
exercise their dis
but reasonably,
play good faith,
City of Newark
thority, 7 N.J.

es of City em-

the complaint re-
the first six para-
it of the complaint

's of New Jersey
nd resolutions of
y in force during
1917 to May 17,
for any paid em-
ersey City to give
n any money or
eration by way of
otherwise as a
g or holding such
of obtaining City
refor. All such
the defendants
under defendants'
ion scheme were
e forfeited to the
and benefit, or as
nd benefit of the
(or their heirs and
whom such mon-
Defendants are re-
such moneys to
int of $15,000,000.

concludes:

tiff demands judg-
efendants, jointly
e amount of $15,-
; and for the im-
in the amount of
iterest, upon the
of the defendants
efit of the plaintiff
the name of plain-
he use and benefit
or their heirs and
the plaintiff from
ts extorted payroll
as alleged herein;
this suit; and for
may be just, equi-

e examined first with
tive law and then in

II. The Substantive Law of the Complaint.

The complaint in effect alleges that the defendants by force of their official positions systematically extorted from the employees of the plaintiff municipality 3% of their official income from 1917 to 1949 as a condition of their employment and continued employment and retained these funds for their own use. The substantial question before us is whether they can be permitted in law to do this.

We do not have to look far for any answer. In Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, at page 474 et seq., 86 A.2d 201, at page 221 (1952), this court said without dissent:

"The members of the board of chosen freeholders and of the bridge commission are public officers holding positions of public trust. They stand in a fiduciary relationship to the people whom they have been elected or appointed to serve. Rankin v. Board of Education, 135 N.J.L. 299, 303, 51 A.2d 194 (E. & A.1947); Trist v. Child, 21 Wall. 441, 88 U.S. 441, 450, 22 L.Ed. 623, 625 (1875); Edwards v. City of Goldsboro, 141 N.C. 60, 53 S.E. 652, 653, 4 L.R.A.,N.S., 589 (Sup.1906); Tuscan v. Smith, 130 Me. 36, 153 A. 289, 294, 73 A.L.R. 1344 (Sup.Jud.1931); State ex rel. Fletcher v. Naumann, 213 Iowa 418, 239 N.W. 93, 99, 81 A.L.R. 483 (Sup.1931); In re Marshall, 363 Pa. 326, 69 A.2d 619, 625 (Sup.1949); 42 Am.Jur., Public Officers, § 8, p. 885; 43 Id. § 260, p. 77–78; 67 C.J.S., Officers, § 6, p. 118. As fiduciaries and trustees of the public weal they are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity. City of Newark v. N. J. Turnpike Authority, 7 N.J. 377, 381–382, 81 A.2d 705 (1951); Ryan v. [City of] Paterson, 66 N.J.L. 533, 535–536, 49 A. 587 (Sup.Ct.1901); Schefbauer v. Board of Township Committee of Kearney, 57 N.J.L. 588, 601, 31 A. 454 (Sup.Ct. 1895); Ames v. Board of Education of Montclair, 97 N.J.Eq. 60, 65, 127 A. 95 (Ch.1925); United States v. Thomas, 15 Wall. 337, 82 U.S. 337, 342, 21 L.Ed. 89, 91 (1873); Paschall v. Passmore, 15 Pa. 295, 304 (Sup.1850); Cumberland County v. Pennell, 69 Me. 357, 365, 31 Am.Rep. 284 (Sup.Jud.1879); Speyer v. School Dist. No. 1, 82 Colo. 534, 261 P. 859, 860, 57 A.L.R. 203 (Sup.1927); 43 Am.Jur., Public Officers, §§ 260–261, pp. 77–78; 43 Id. § 267, p. 82; 67 C.J.S., Officers, § 114, p. 402. They must be impervious to corrupting influences and they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly. When public officials do not so conduct themselves and discharge their duties, their actions are inimicable to and inconsistent with the public interest, and not only are they individually deserving of censure and reproach but the transactions which they have entered into are contrary to public policy, illegal and should be set aside to the fullest extent possible consistent with protecting the rights of innocent parties. Brooks v. Cooper, 50 N.J.Eq. 761, 26 A. 978, 21 L.R.A. 617 (E. & A.1893); Cameron v. International, &c., Union No. 384, 118 N.J.Eq. 11, 176 A. 692, 97 A.L.R. 594 (E. & A.1935); Girard Trust Co. v. Schmitz, 129 N.J.Eq. 444, 20 A.2d 21 (Ch.1941); Allen v. Commercial Casualty Insurance Co., 131 N.J.L. 475, 477–478, 37 A.2d 37, 154 A.L.R. 834 (E. & A.1944); Stone v. William Steinen Mfg. Co., 133 N.J.L. 593, 595, 45 A.2d 486 (E. & A.1946); Pan American Petroleum & Transport Co. v. United States, 273 U.S. 456, 500, 47 S.Ct. 416, 71 L.Ed. 734, 745 (1927); Mammoth Oil Co. v. United States, 275 U.S. 13, 48 S.Ct. 1, 72 L.Ed. 137 (1927); Edwards v. City of Goldsboro, supra,

141 N.C. 60, 53 S.E. 652 (Sup.1906); Tuscan v. Smith, supra, 130 Me. 36, 153 A. 289 (Sup.Jud.1931); 43 Am.Jur., Public Officers, § 291, p. 101.

"These obligations are not mere theoretical concepts or idealistic abstractions of no practical force and effect; they are obligations imposed by the common law on public officers and assumed by them as a matter of law upon their entering public office. The enforcement of these obligations is essential to the soundness and efficiency of our government, which exists for the benefit of the people who are its sovereign. Constitution of 1947, art. I, par. 2. The citizen is not at the mercy of his servants holding positions of public trust nor is he helpless to secure relief from their machinations except through the medium of the ballot, the pressure of public opinion or criminal prosecution. He may secure relief in the civil courts either through an action brought in his own name, Tube Reducing Corp. v. Unemployment Compensation Commission, 1 N.J. 177, 181, 62 A.2d 473, 5 A.L.R.2d 855 (1948); Waszen v. Atlantic City, 1 N.J. 272, 276, 63 A.2d 255 (1949); Haines v. Burlington County Bridge Commission, 1 N.J.Super. 163, 170–173, 63 A.2d 284 (App.Div.1949), or through proceedings instituted on his behalf by the Governor, Constitution of 1947, art. V, sec. I, par. 11, or by the Attorney General, Public Service Coordinated Transport v. State, 5 N.J. 196, 207–209, 74 A.2d 580 (1950). Under the former practice the great prerogative writs, especially *certiorari*, were generally available to the aggrieved citizen, but by art. VI, sec. V, par. 4 of the Constitution of 1947 the relief theretofore granted in such matters as a matter of judicial discretion became a matter of right, see Ward v. Keenan, 3 N.J. 298, 303–309, 70 A.2d 77 (1949). Nonfeasance, misfeasance, malfeasance and corruption in public office cannot prevail against an aroused citizenry who have it in their power to end the misconception of some public officials that their obligations are fully met so long as they obey the letter of the law and avoid its penal sanctions. That the shortcomings of some public officers may not make them accountable in our criminal courts does not mean that their nefarious acts cannot successfully be attacked through the processes of the civil law. * * * *It is the potential for evil and not the actual financial loss or other injury incurred that renders a transaction illegal because of an abuse of discretion,* McCarter v. Firemen's Insurance Co., 74 N.J.Eq. 372, 73 A. 80, 414, 29 L.R.A., N.S., 1194 (E. & A.1909); Cameron v. International, &c., Union No. 384, supra, 118 N.J.Eq. 11, 30, 176 A. 692, 97 A.L.R. 594 (E. & A.1935); Edwards v. City of Goldsboro, supra, 141 N.C. 60, 53 S.E. 652, 655 (Sup.1906)."

Manifestly the instant case falls within the pattern of the Driscoll case.

Restitution was likewise invoked in such cases as United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910), where the defendant, an army officer in charge of procurement, entered into an arrangement with two contractors by which he exercised his official discretion in such a way as to give them more contracts and more profits. The court traced his share in this enterprise into the hands of other defendants, who were not purchasers in good faith, and subjected the money to a constructive trust, saying:

"It would be a dangerous precedent to lay down as law that unless some affirmative fraud or loss can be shown, the agent may hold on to any secret benefit he may be able to make out of his agency. The larger interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent. If he takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full

disclosure,
and a breac
account to
received.

"The doc
has been a
agency or
not from t
the fiducia
against wh
founded on
relation, ar
tance. 'It i
Thurlow, i
Mackenzie,
particular n
of characte
tion, is, or
taches.'" U
pra, 217 U.
page 520.

The same p
of Minneapol
301, 142 N.W
(Sup.Ct.1913)

"We mee
while head
an agent of
discharge of
of his fellow
an advisory
charged wit
lecting a site
erty and ca
plaintiff for
vance in p
Can plaintiff
doctrine of
from abuse o
familiar to
consideration
ciples is nec
to determine
No man can
same person
and at the s
the same ma
whose interes
his'; nor ca
by his own w
constructive
stances of ap

e public officials that .re fully met so long etter of the law and .anctions. That the some public officers hem accountable in :s does not mean that ts cannot successful- ırough the processes * * * *It is the and not the actual ›ther injury incurred ·ansaction illegal be- ·e of discretion,* Mc- ı's Insurance Co., 74 .. 80, 414, 29 L.R.A., A.1909); Cameron v. , Union No. 384, su- :1, 30, 176 A. 692, 97 A.1935); Edwards v. ›, supra, 141 N.C. 60, (Sup.1906)."

.nt case falls within the oll case.

kewise invoked in such ıtes v. Carter, 217 U.S. 54 L.Ed. 769 (1910), nt, an army officer in ment, entered into an ʋo contractors by which ficial discretion in such ıem more contracts and court traced his share nto the hands of other ʋere not purchasers in bjected the money to a saying:

. dangerous precedent law that unless some or loss can be shown, ıold on to any secret e able to make out of e larger interests of .ll not tolerate, under s, that a public official profit or advantage :alize through the ac- nterest in conflict with agent. If he takes any benefit in violation of uires any interest ad- ncipal, without a full

disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received.

"The doctrine is well established and has been applied in many relations of agency or trust. The disability results not from the subject-matter, but from the fiduciary character of the one against whom it is applied. It is founded on reason and the nature of the relation, and is of paramount importance. 'It is of no moment,' said Lord Thurlow, in The York Bldgs. Co. v. Mackenzie, 3 Paton, 378, 'what the particular name or description, whether of character or office, situation or position, is, on which the disability attaches.'" United States v. Carter, supra, 217 U.S. at page 306, 30 S.Ct. at page 520.

The same principles were applied in City of Minneapolis v. Canterbury, 122 Minn. 301, 142 N.W. 812, 48 L.R.A.,N.S., 842 (Sup.Ct.1913):

"We meet these facts: Defendant, while head of the fire department and an agent of the city, intrusted with the discharge of important duties on behalf of his fellow citizens and also acting in an advisory capacity to the committee charged with the responsibility of selecting a site, acquired title to real property and caused it to be conveyed to plaintiff for such use at a material advance in price. The question is: Can plaintiff recover the excess? The doctrine of constructive trust arising from abuse of fiduciary relations is too familiar to require exposition. Some consideration of its underlying principles is necessary, however, in order to determine whether it is applicable. No man can serve two masters, and 'the same person cannot act for himself, and at the same time, with respect to the same matter, as agent for another, whose interest might be in conflict with his'; nor can he be allowed to profit by his own wrong, even if such be only constructive wrong. * * * The instances of application of the rule under consideration to public officers in this state have been where the officer has sought a recovery from the municipality, and we are now for the first time called upon to determine whether it should be applied by constructing a trust in favor of the municipality upon the misconduct of an officer. The principle is the same, however, and it is settled that, 'if the prohibited or void contract has been executed, the officer becomes a trustee for the municipality, and is bound to account for any profits which he derived from the transaction.' 2 Dill. Municip. Corp. (5th Ed.) § 773, p. 1150." (142 N.W. at pages 814-815.)

The same principles are elucidated in two Massachusetts cases decided almost simultaneously. In the first, City of Boston v. Santosuosso, 298 Mass. 175, 10 N.E.2d 271, 274 (Sup.Jud.Ct.1937), the complaint charged the defendants, including Mayor Curley, with using their influence to have a certain claim against the city settled under an agreement by which Curley and other defendants shared in the settlement. The court held:

"The right of the city of Boston as a cestui que trust is preeminently an equitable right, and it arose as soon as the agreement was made and the fund was received by its mayor. When the fund was received under the agreement by the mayor the defendants held the legal title in trust to pay it over to the city of Boston."

The other Massachusetts case, City of Boston v. Dolan, 298 Mass. 346, 10 N.E.2d 275, 277, 281 (Sup.Jud.Ct.1937), is to the same effect:

"But as city treasurer the defendant was a fiduciary. As such he could be compelled to account in equity like a trustee, regardless of a possible remedy at law, and could not be permitted to retain a secret profit made in transactions conducted for the city. The saying, 'Public office is a public trust,' is more than mere rhetoric. Ashley v. Three Justices of the Superior Court, 228 Mass. 63, 73, 116 N.E. 961, 8 A.L.R.

1463; [City of] Boston v. Santosuosso, [298 Mass. 175] 10 N.E.2d 271; United States v. Carter, 217 U.S. 286, 306, 30 S.Ct. 515, 54 L.Ed. 769, 19 Ann.Cas. 594; [City of] Minneapolis v. Canterbury, 122 Minn. 301, 307, 308, 142 N.W. 812, 48 L.R.A.,N.S., 842, Ann.Cas. 1914D, 804; City of Butte v. Goodwin, 47 Mont. 155, 163, 134 P. 670, Ann.Cas. 1914C, 1012; Judevine v. [Town of] Hardwick, 49 Vt. 180, 185; [City of] Milwaukee v. Drew, 220 Wis. 511, 518, 519, 265 N.W. 683, 104 A.L.R. 1387. Toronto v. Bowes, 4 Grant's Ch. 489, affirmed in Bowes v. Toronto, 6 Grant's Ch. 1, 11 Moore P.C. 463. St.1909, c. 486, § 8; G.L.(Ter.Ed.) c. 268, § 9; Dillon, Mun. Corp. (5th Ed.) § 772; Am.Law Inst. Restatement, Trusts, §§ 170, 205, 206. See, also, Newburyport v. Spear, 204 Mass. 146, 149, 90 N.E. 522, 134 Am.St.Rep. 652; Carleton & Hovey Co. v. Burns, 285 Mass. 479, 485, 189 N.E. 612; Cann v. Barry, [293 Mass. 313], 199 N.E. 905; and the cases collected in 49 Harv.Law Rev. 559 et seq."

The case of Reading v. Attorney General, (1951) A.C. 507; 1 All E.R. (1951) 612, in the House of Lords, is an even stronger decision in its bearing on the case at bar. Reading, a sergeant in the British Army Medical Corps stationed in Egypt, received about £ 20,000 from a group of smugglers for riding in uniform on various trucks which they were using in their smuggling activities into Cairo, the idea being that the truck would not be stopped by the Egyptian police if a British soldier in uniform was riding upon it. The English government seized the money, and after serving a term in prison Reading brought a petition to recover the money. It is important to the decision of the case at bar to note that the money in question in the Reading case never belonged to the government (here the plaintiff, Jersey City) nor was it in any way out-of-pocket in the transaction. Nevertheless, the House of Lords held that the government was entitled to the money on the ground that Reading obtained it illegally as a result of the misuse of his position as a soldier in the English Army. Lord Porter stated:

> "In my opinion any official position, whether marked by a uniform or not, which enables the holder to earn money by its use gives his master a right to receive the money so earned even though it was earned by a criminal act. 'You have "earned"', the master can say, 'money by the use of your position as my servant. It is not for you, who have gained this advantage, to set up your own wrong as a defense to my "claim."' * * *" (p. 619)

> "It is often convenient to speak of money obtained as received in the course of the servant's employment, but, strictly speaking, I do not think that expression accurately describes the position where a servant receives money by reason of his employment, but in dereliction of his duty. * * *" (p. 620)

> "The fact that the Crown in this case, or that any master, has lost no profits or suffered no damage is, of course, immaterial and the principle is so well known that it is unnecessary to cite the cases illustrating and supporting it. *It is the receipt and possession of the money that matters, not the loss or prejudice to the master.* * * *" (p. 621)

Lord Porter also based the case on the additional ground of a fiduciary relationship:

> "As to the assertion that there must be a fiduciary relationship, the existence of such a connection is, in my opinion, not an additional necessity in order to substantiate the claim, but another ground for succeeding where a claim for money had and received would fail. In any case, I agree with Asquith, L. J., in thinking that the words 'fiduciary relationship' in this setting are used in a wide and loose sense and include, *inter alios*, a case where the servant gains from his employment a position of authority which enables him to obtain the sum which he receives." (p. 620)

This view of the American Law In *Restitution:*

"Section 190, ( a person in a fid other acquires pr sition or retentic in violation of h he holds it upor for the other."

"Section 197, *Received by Fidi* ciary in violatio beneficiary recei or commission oi what he receive trust for the ben

"Comment: a *sions.* The rule applicable not or receives somethi bribe given him order to induce as a fiduciary, bu is given to him good faith, if it done by him in c formance of hi * * *"

"c) *Where n* The rule stated cable although tl fiduciary is not beneficiary. *

[2] As these d *ment* show, the de of restitution, bo as a remedy for l of his fiduciary been salutary. R adaptability to ind principles may, situations beyond or criminal rem equitable princip ington-Bristol Bri at pages 497–504, ous alternatives v to working out ju

as a soldier in the
Porter stated:

ıy official position,
a uniform or not,
lder to earn money
master a right to
so earned even
l by a criminal act.
', the master can
se of your position
s not for you, who
vantage, to set up
; a defense to my
' (p. 619)

enient to speak of
; received in the
vant's employment,
ıg, I do not think
rately describes the
vant receives mon-
is employment, but
s duty. * * *"

: Crown in this case,
has lost no profits
nage is, of course,
principle is so well
ıecessary to cite the
and supporting it.
*d possession of the*
*not the loss or prej-*
. * * *" (p. 621)

d the case on the addi-
luciary relationship:

tion that there must
ıtionship, the exist-
onnection is, in my
ditional necessity in
iate the claim, but
ır succeeding where
y had and received
y case, I agree with
ı thinking that the
relationship' in this
n a wide and loose
, *inter alios*, a case
gains from his em-
n of authority which
ain the sum which he
)) .

This view of the law is borne out by the American Law Institute *Restatement on Restitution:*

"Section 190, *General Rule*: Where a person in a fiduciary relation to another acquires property, and the acquisition or retention of the property is in violation of his duty as a fiduciary, he holds it upon a constructive trust for the other."

"Section 197, *Bonus or Commission Received by Fiduciary:* Where a fiduciary in violation of his duty to the beneficiary receives or retains a bonus or commission or other profit, he holds what he receives upon a constructive trust for the beneficiary."

"Comment: a) *Bribes and Commissions.* The rule stated in this section is applicable not only where the fiduciary receives something in the nature of a bribe given him by a third person in order to induce him to violate his duty as a fiduciary, but also where something is given to him and received by him in good faith, if it was received for an act done by him in connection with the performance of his duties as fiduciary. * * *"

"c) *Where no harm to beneficiary.* The rule stated in this Section is applicable although the profit received by the fiduciary is not at the expense of the beneficiary. * * *"

[2] As these decisions and the *Restatement* show, the development of the principle of restitution, both at law and in equity, as a remedy for breach by a public official of his fiduciary obligations has obviously been salutary. Restitution, by virtue of its adaptability to individual cases on equitable principles may, as we have seen, reach situations beyond the grasp of other civil or criminal remedies and do justice on equitable principles; see Driscoll v. Burlington-Bristol Bridge Co., supra, 8 N.J. 433, at pages 497–504, 86 A.2d 201, where various alternatives were weighed with a view to working out justice so far as possible to all concerned, but always on the fundamental basis of preventing the unfaithful public official or public body profiting from his or its wrongdoing. See 65 Harv.L.Rev. 502 (1952); Lenhoff, The Constructive Trust as a Remedy for Corruption in Public Life, 54 Col.L.Rev. 214 (1954).

[3–5] Applying these principles to the substance of the complaint we find that the first count alleges that the defendants as individuals and as public officials "did steal and did unlawfully, fraudulently, corruptly and with gross breach of trust, extort and appropriate to themselves property of the city, to wit, money." It then sets forth the means by which the theft and extortion of city property was accomplished, namely, "by means of the extortion from the employees of the City three percent of the annual salary of each. * * * In such manner and at such times as to have constituted, in law, thefts, defrauds and extortions from the City payroll funds, which were the property of the City, * * *." The first count sounds in restitution to permit the city to recover its property wrongfully taken by the defendant from it. Confusion results only from the language concerning the manner and means by which the taking of the property from the city was accomplished. On this count the city has the power to bring suit for the recovery of its property in the same manner as natural persons, see McQuillin on Municipal Corporations (3rd ed.), § 49.02. The city itself is the real party in interest, R.R. 4:30–1. The general description of the method used by the plaintiff satisfies R.R. 4:9–1, and to hold otherwise would do violence to the new practice.

[6] To sustain the complaint all we need to find is that it sets forth at least one sufficient claim. See R.R. 4:8–5(b) where it provides:

"When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements."

[7] But the second count also alleges basically that it was unlawful for the employees of the city to pay consideration for obtaining or holding city employment, and that all such money extorted by the defendants "were subject to be forfeited [1] to the City for its own use and benefit, or [2] as trustee for the use and benefit of the employees." The second count involves at least the elements of a cause of action arising from the wrongful acts of the defendants, for the reasons set forth in Driscoll v. Burlington-Bristol Bridge Co., supra, 8 N.J. 433, especially at pages 474–476, 86 A.2d 201, hereinbefore quoted. The general theory of recovery in the second count is that a constructive trust exists in favor of the city for the profit realized by its officials.

[8] It was urged at the oral argument that the payments of city employees were voluntary political contributions, but the complaint contains no such allegations and therefore such facts are not before us.

The *ad damnum* clause is consistent with the demands of the respective counts and therefore proper.

But it is urged that a municipality as distinguished from a sovereign body has no power to sue to enforce a constructive trust unless specifically authorized by legislation and that the cases that we have relied upon where suit is brought by a sovereign power have no applicability.

It does not appear from the authorities that express powers by statute are required as a prerequisite to the maintenance of all actions by municipal corporations. Actions by corporations have been sustained on the theory that the right to sue is inherent in a municipal corporation and an incident to its existence. In Caddo Parish School Board v. Pyle, 30 So.2d 349, 351 (La.Ct.App.1947), the court said:

> "It would be absurd for the Legislature to create a political corporation, such as a school board, authorize and empower it to acquire property, * * * in order to carry out the purposes for which created, and then withhold from such legal entity the right and power to invoke the aid of the judicial branch of the state government to protect it in the possession of such property, and in its efforts to achieve and attain the important results contemplated in its creation. This right is inherent in such a corporation, and an incident to its existence. McQuillin on Municipal Corporations, Volume 6, Section 2650; Board of Commissioners of Orleans Levee District v. Blythe, 163 La. 929, 113 So. 150."

See also Board of Park Commissioners v. City of Nashville, 134 Tenn. 612, 185 S.W. 694, 700 (Sup.Ct.1915), and Denton v. Jackson, 2 Johns.Ch., N.Y., 320 (Ch.1817), where in a learned note to this latter case in 1 N.Y.Ch.Rep. 394, it was said:

> "A supervisor of a town in discharging his duties as such is *pro tanto* a corporation. He has the capacity of suing and being sued, so far as his trust is concerned. Cited, Jansen v. Ostrander, 1 Cow., [N.Y., 670] 680. See Norwich v. [Overseers] New Berlin, 18 Johns., [N.Y.] 382; Pittstown v. [Overseers of Poor of] Plattsburgh, 15 Johns., [N.Y.] 436; [Id.], 18 Johns., [N.Y.] 407; Jackson v. Hartwell, 8 Johns., [N.Y.] 425; 1 Kyd. Corp. 29–32. * * *
>
> * * * * * *
>
> "Power to sue. There is an implied power in public officers to take all legal measures, in their official character, which may be requisite to enable them to execute a trust or discharge the duty imposed on them by law, where there is no statute prescribing the means by which such trust shall be executed or duty discharged. Cited, Cornell v. [Town of] Guilford, 1 Denio 515. See Supervisors of Galway v. Stimson, 4 Hill 136; Jackson v. Hartwell, 8 Johns. 422. * * *"

Our Constitution, Art. IV, Sec. VII, par. 11 provides:

> "11. The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or co
> shall be liberally
> favor. The power
> such municipal cor
> clude not only those
> terms but also tho
> fair implication, o
> powers expressly co
> thereto, and not in
> prohibited by this
> law."

R.S. 40:43–1, N.J.S

> "The inhabitants
> pality shall be a bod
> and in law, and by
> it * * * may
> * * *"

To hold that specifi
required in every inst
to render meaningless
power to sue which a
tional mandate must l
See Edwards v. Mayo
3 N.J. 17, 68 A.2d 74

The constructive tr
plied without any per
able the City of Min
profit made by one of
sale of land to it. C
Canterbury, supra.

> "That an officer c
> with city funds m
> without sustaining a
> for resulting profit
> we repudiate withc
> any person acting i
> may, with impunity
> keep his share of th
> an unlawful ente
> deny." City of M
> 220 Wis. 511, 265
> 686, 104 A.L.R. 1
> (Sup.Ct.1936).

See also City of Butte
155, 134 P. 670 (Sup.
Town of Hardwick,
1876); 38 Am.Jur.,
712.

judicial branch
nt to protect it
ch property, and
e and attain the
emplated in its
inherent in such
incident to its
on Municipal
6, Section 2650;
ers of Orleans
he, 163 La. 929,

Commissioners v.
enn. 612, 185 S.W.
, and Denton v.
.Y., 320 (Ch.1817),
to this latter case
was said:

own in discharg-
h is *pro tanto* a
the capacity of
so far as his trust
Jansen v. Ostran-
0] 680. See Nor-
New Berlin, 18
; Pittstown v.
f] Plattsburgh, 15
[Id.], 18 Johns.,
a v. Hartwell, 8
1 Kyd. Corp. 29–

* * *

here is an implied
rs to take all legal
official character,
ite to enable them
discharge the duty
law, where there
ing the means by
all be executed or
Cited, Cornell v.
1 Denio 515. See
vay v. Stimson, 4
Hartwell, 8 Johns.

rt. IV, Sec. VII, par.

ons of this Con-
ly law concerning
ns formed for local

government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law."

R.S. 40:43-1, N.J.S.A., provides:

> "The inhabitants of every municipality shall be a body corporate in fact and in law, and by its corporate name it * * * may sue and be sued. * * *"

To hold that specific express authority is required in every instance of suit would be to render meaningless the general statutory power to sue which according to constitutional mandate must be liberally construed. See Edwards v. Mayor, etc., of Moonachie, 3 N.J. 17, 68 A.2d 744 (1949).

The constructive trust doctrine was applied without any permissive statute to enable the City of Minneapolis to recover a profit made by one of its officials from the sale of land to it. City of Minneapolis v. Canterbury, supra.

> "That an officer of the city intrusted with city funds may so employ them without sustaining a liability to the city for resulting profits is a doctrine that we repudiate without hesitation; that any person acting in concert with him, may, with impunity from civil liability, keep his share of the profits from such an unlawful enterprise we likewise deny." City of Milwaukee v. Drew, 220 Wis. 511, 265 N.W. 683, at page 686, 104 A.L.R. 1387, at page 1393 (Sup.Ct.1936).

See also City of Butte v. Goodwin, 47 Mont. 155, 134 P. 670 (Sup.Ct.1913); Judevine v. Town of Hardwick, 49 Vt. 180 (Sup.Ct. 1876); 38 Am.Jur., Municipal Corp., sec. 712.

[9] The fact that in so few cases the issue of power to bring such a suit has been raised, and rarely successfully, is, we think, indicative that the generally accepted belief is that a municipal corporation has the inherent power as an incident to its creation.

[10, 11] The acts alleged in the complaint, if true, were unlawful, improper, fraudulent and corrupt and it would be unconscionable for a court with equitable powers to add any dignity to such misconduct by refusing relief to a proper party. The City of Jersey City is the proper party, by the very nature of the allegations of the complaint, to seek to recover its own property wrongfully taken, to seek to recover property which in good conscience as between the parties to the suit belongs to the city or to right a wrong perpetrated upon its servants and inhabitants. Furthermore, it must be remembered that the court will not permit a trust to fail for the want of a trustee and that equity has the power to provide a trustee, if it should be necessary. Restatement, Trusts, sec. 32, 396; Scott on Trusts, sec. 101.

From the standpoint of substantive law the complaint states claims on which relief may be based.

III. The Procedural Aspects of the Complaint.

On the defendant Hague's simple six-line motion, without supporting affidavit, to dismiss the complaint for failure to state a ground on which relief could be granted, the trial court dismissed the complaint for a multitude of procedural deficiencies. He found the complaint we have analyzed

> "contradictory, ambiguous and confusing, in addition to its being omissively deficient in at least one vital particular. It is my opinion that within the minimum requirements of good pleading the complaint cannot be allowed to stand. Its inadequacy is partly reflected in the *ad damnum* clause, this being in the alternative. The clause asks judgment against defend-

ants as for money belonging to the plaintiff, and also for the same money to be held by the plaintiff as trustee for the city's employees, from whom the moneys were allegedly obtained by defendants. No authority is averred for the bringing of this suit on behalf of the employees, who are described as the beneficiaries of the litigation. Plaintiff derives no authority in this connection from the fact that these persons happened to be its employees at the time of whatever transactions may have been had by them with defendants. 'Every action must be prosecuted in the name of the real party in interest' (R.R. 4:30-1). And even if the suit were expressly authorized by the employees, I think there can be no doubt that its prosecution would be beyond the facilities of plaintiff as a municipal corporation, and so *ultra vires.*

"Moreover, there is no allegation that either of the defendants as an official of the plaintiff city received money from the city's employees. The plain import of the pleading is that any such money receipts were realized not by anyone as mayor or other official but by one holding place and power in a political party organization, and in the latter capacity. No one would have power or authority to receive such money as an official of the city, and any receipt of moneys would be legally unaffected by the circumstance of the recipient's being mayor or other official at the time. This is another way of saying that it was not as a fiduciary of plaintiff that the moneys could have been received by either defendant, any more than it was by plaintiff's employees, as such, that the moneys could have been paid. In and by the very act of paying and receiving, the parties to the transaction legally stepped out of their respective positions in order to commit the act. The circumstance that defendants and their alleged tributaries held the municipal positions ascribed to them is extraneous to what the complaint seems to tender as the basic issue.

"The complaint appears to me to be completely stultified by its incongruities. In one aspect plaintiff claims the return of its own moneys; in another, and in the same paragraph, it claims the return of these moneys as belonging to the employees, there being no authority shown for the making of the latter claim. No case, explicit or implicit, is pleaded for the establishment of a trust. The court could not proceed to a meritorious determination of the present motion without conjecture as to the true cause intended. It is not necessary to state that pleading of this kind is by all means to be discouraged.

"What this motion presents is not a mere matter of inconsistent pleading, such as the rules allow, but rather a matter of inherent repugnance occurring within a single context. Defendants argue their motion on the basis of a meaning which they extract from the complaint. In doing this they, in a legal sense, act arbitrarily for the reason that the meaning they extract and deal with is really not pleaded. This also is something not to be encouraged, if rules of valid pleading are to be effective. The argument made for plaintiff, on the other hand, is a plea for the recognition and application of a legal tenet that could have its support only in principles that make for a constructive or resulting trust. But the complaint, as I have said, is devoid of allegations of the kind that would sustain a claim of trust or fiduciary relation. 'In all averments of * * * fraud (or) breach of trust * * * particulars of the wrong with dates and items if necessary shall be stated so far as practicable.' (R.R. 4:9-1).

"In Flint Frozen Foods, Inc. v. Firemen's Ins. Co. of N. J., 8 N.J. 606, at [page] 611, [86 A.2d 673,] the court said: 'While a party may claim inconsistent claims or defenses, Rule 3:8-5(b), and may argue inconsistent principles of law, he cannot be heard

*here* to contend f
opposed sets of fa
Estate], 5 N.J. 51

[12] While it r
the complaint in tl
have offended Chitt
Daniell and Mitfor
be borne in mind t
earlier age of speci
been equally annoy
approved in the ru
elsewhere. The tec
which formerly oft
substantial justice
rules of court whic
claim for relief ne
on which the claim
in simple, concise
4:8-5(a), and whicl
set forth two or mo
hypothetically, cons
gal or equitable, R
demand for relief
native or of sever
4:8-1(b). The acts
or claims are base
according to their l
ly to apprise the ad
tended to be proved,
states the cardinal
ings shall be so c
stantial justice."

"The grand ob
ment for simplifi
of court is the e
terminable prolix
nicalities of spec
the days of Barc
to return, made a
tive law as well
tice for the sa
* * * The co
saved from the
pleading and es
and technicalitie
effectively than i
the process the s
been changed. C
been preserved a
been made to se
stantial justice, n

ıpears to me to be by its incongrui- plaintiff claims the oneys; in another, ragraph, it claims moneys as belong- es, there being no the making of the ıse, explicit or im- r the establishment ıurt could not pro- ious determination ıtion without con- ue cause intended. to state that plead- by all means to be

ɔn presents is not a consistent pleading, allow, but rather a repugnance occur- e context. Defend- notion on the basis h they extract from doing this they, in arbitrarily for the eaning they extract really not pleaded. thing not to be en- s of valid pleading ve. The argument , on the other hand, recognition and ap- gal tenet that could nly in principles that tructive or resulting complaint, as I have f allegations of the sustain a claim of y relation. 'In all * * fraud (or) * * particulars of ates and items if nec- ted so far as practica- ).

en Foods, Inc. v. Fire- f N. J., 8 N.J. 606, at A.2d 673,] the court party may claim in- ıs or defenses, Rule ıay argue inconsistent v, he cannot be heard

*here* to contend for two diametrically opposed sets of fact.' In re Perrone['s Estate], 5 N.J. 514, 527 [76 A.2d 518]."

[12] While it must be conceded that the complaint in the pending case would have offended Chitty and Tidd no less than Daniell and Mitford, it is nevertheless to be borne in mind that these giants of an earlier age of special pleading would have been equally annoyed at the official form approved in the rules of court, here and elsewhere. The technicalities of procedure which formerly often made a mockery of substantial justice have been replaced by rules of court which merely require that a claim for relief need only aver the facts on which the claim is based, R.R. 4:8-1(a), in simple, concise and direct terms, R.R. 4:8-5(a), and which permit a complaint to set forth two or more claims alternatively, hypothetically, consistent or inconsisent, legal or equitable, R.R. 4:8-5(b), while the demand for relief may be singular, alternative or of several different types, R.R. 4:8-1(b). The acts upon which the claim or claims are based need only be pleaded according to their legal effect in form fairly to apprise the adversary of the facts intended to be proved, R.R. 4:9-3. R.R. 4:8-6 states the cardinal objective: "All pleadings shall be so construed as to do substantial justice."

> "The grand objective of the movement for simplified procedure by rules of court is the elimination of the interminable prolixity and absurd technicalities of special pleading, which in the days of Baron Parke, gone never to return, made a mockery of substantive law as well as of substantial justice for the sake of the 'record.' * * * The common law has been saved from the excesses of special pleading and especially its verbosity and technicalities, and nowhere more effectively than in New Jersey, but in the process the substantive law has not been changed. On the contrary, it has been preserved and our procedure has been made to serve the ends of substantial justice, not by abandoning stating the essentials of a cause of action or of a defense, but by doing so in 'simple, concise and direct terms,'" Grobart v. Society for Establishing Useful Mfgs., 2 N.J. 136, at pages 151-152, 65 A.2d 833, at page 839 (1949).

But however liberal pleadings may be, the requirement still remains that at least the gist of a substantive ground of relief must be set forth, albeit informally.

To understand the modern system of pleading it is essential to indicate the line distinguishing the liberality of the rule permitting amendments on the one hand and of the necessity for stating, however informally, the gist of a ground for relief which may in appropriate instances be made the basis of an attack in law on the complaint by way of summary judgment.

[13, 14] Broad power of amendment is contemplated by the rules (R.R. 4:15) at any stage of proceedings, and is permitted except when justice to a party prejudiced thereby requires that it be forbidden. Under a modern system of pleading by rules of court "the record" with us is not the all essential that it was at common law; with us the achievement of substantial justice is the fundamental consideration. To that end leave to amend "shall be freely given when justice so requires." R.R. 4:15-1.

> "Under Rule 3:15-1 [now R.R. 4:15-1] it is entirely proper for the trial court to permit a complaint to be amended where it appears that the plaintiff may have a valid cause of action." Thermoid Co. v. Consolidated Products Co., 7 N.J. 283, 289, 81 A.2d 473, 475 (1951).

Amendments, in practice, play a large part at pretrial conferences, where the pleadings are regularly reviewed in the light of the conference for possible amendments. R.R. 4:29-1.

[15-17] Nor are inconsistent, hypothetical or alternative claims or demands to be condemned "regardless of whether such inconsistency is in point of law or fact," at least until all of the facts have been devel-

oped, for the spirit and intent of still another principle of the new practice requires a party to join all matters in controversy so that they may be disposed of and settled without multiplicity of action.

"True it is that the rules properly require that a motion to amend the complaint, made under the present circumstances, should be by leave of court or on consent, thus indicating that plaintiff must show cause in order to be permitted thus to amend. Rule 3:15-1 [now R.R. 4:15-1]. This cause should include, for instance, inadvertence, plus *prima facie* merits; else the trial might be unduly delayed by useless and sham papers. But if plaintiff shows this cause, the amendment should be permitted, since the rules expressly provide for pleading 'separate claims * * * regardless of consistence * * *' Rule 3:8-5(b) [now R.R. 4:8-5(b)]. It would seem that these inconsistent claims to which this part of the rule refers, are claims that are inconsistent in point of law, since this part of the rule alludes to the legal or equitable grounds of the pleading. On the other hand, it would seem that the other portion of the rule alluding to 'two or more statements of a claim or defense (set forth) alternatively or hypothetically' refers to inconsistency in point of fact. Such a construction of these broadened provisions of the new rule gives reasonable effect to the principles alluded to in Rose v. Jerome Harvey Development Co., 113 N.J.Eq. 161, 165, 166 A. 149 (E. & A.1933) and Morris v. Jersey Central Power & Light Co., 118 N.J. Eq. 541, 179 A. 683 (Ch.1935), in requiring that a party shall not play fast and loose with facts on the one hand, but on the other that he shall not be foreclosed from pleading facts alternatively or hypothetically, according to the rules, until his opponent's version of the facts has been disclosed. * * it appears (1) that the new rules permit greater liberality than existed under the old practice for pleading claims or defenses, inconsistent in point of either law or fact; (2) that the purpose of these more liberal pleadings is to prevent the pleader from being foreclosed from asserting any rights to which he may perchance be entitled, until the true facts on both sides are known; (3) that the greater power of discovery of the facts under the new practice, plus the additional check on ascertaining the actual issues, as afforded by pretrial, which succeeds discovery, but precedes trial, will prevent sham and unnecessary pleadings from obscuring the true issues at trial." Young v. George C. Fuller Contracting Co., Inc., 12 N.J.Super. 554, 560, 80 A.2d 135, 137 (Law Div.1951).

The Fuller case also sheds light on the point when a party must elect as between inconsistent stands:

"Hence (4) under normal circumstances, the doctrine of election of remedies should not be applied as strictly under the new practice as formerly, and generally, a party should not be foreclosed from pleading any claim or defense, until all the facts on both sides, material to such party's position, are substantially known." (12 N.J.Super. at page 562, 80 A.2d at page 139.)

And in Ajamian v. Schlanger, 14 N.J. 483, at page 490, 103 A.2d 9, at page 12 (1954), this court held:

"Indeed, unless equities in favor of other parties intervene, his final choice of remedy under appropriate pleadings and pretrial order may await the close of the proofs at the trial."

[18] In the light of these authorities it seems clear that the trial court erred in relying as authority for an "inherent repugnance within a single context" on the single sentence in Flint Frozen Foods, Inc., v. Firemen's Ins. Co., 8 N.J. 606, at page 611, 86 A.2d 673, at page 675 (1952), where this court said:

"While a party may plead inconsistent claims or defenses, Rule 3:8-5(b),

[now R.R. 4:8–
inconsistent prir
not be heard *her*
Court after trial
two diametrica
facts.'" (Italic
plied.)

The privilege o:
claims was lost u
supra, at the end o:

The distinction
the Flint case anc
consistency in plea
Fuller case, supra
12 N.J.Super. 554,
at page 139:

"Nor are the
defendant to the
Society, etc., 2
833 (1949); Str
Super. 456, 69 A
In re Perrone's
A.2d 518 (195C
bucher, 140 N.J
(Ch.1947). In
court, by its ow
consistent plead
are set up in
This is becaus
'shifting causes
pleading will co
pose of all plead
issue or issues
party's changin
to in the above
Lizak cases, th
occurred, not at
of pleading, bef
full facts, but af
full facts, i. e., 
peal. Clearly, k
it is but fair the
elected his positi
might perchance
it would be a 
whether the ju
or fact B to e
aid justice, not 
gamble on the fi
to submit his cas
or hypothetically

istent in point of
(2) that the pur-
liberal pleadings
leader from being
rting any rights to
hance be entitled,
on both sides are
greater power of
cts under the new
dditional cheek on
ual issues, as af-
which succeeds dis-
trial, will prevent
ry pleadings from
issues at trial."
Fuller Contracting
iper. 554, 560, 80
Div.1951).

o sheds light on the
ust elect as between

r normal circum-
ie of election of
ot be applied as
w practice as for-
y, a party should
rom pleading any
til all the facts on
l to such party's
ially known." (12
562, 80 A.2d at

hlanger, 14 N.J. 483,
9, at page 12 (1954),

uities in favor of
ne, his final choice
propriate pleadings
ay await the close
rial."

f these authorities it
trial court erred in
an "inherent repug-
ontext" on the single
zen Foods, Inc., v.
N.J. 606, at page 611,
'5 (1952), where this

ay plead inconsis-
es, Rule 3:8-5(b),

[now R.R. 4:8-5(b)] and 'may argue inconsistent principles of law, he cannot be heard *here* [i. e., in the Supreme Court after trial below] to contend for two diametrically opposed sets of facts.'" (Italics and brackets supplied.)

The privilege of pleading inconsistent claims was lost under the Ajamian case, supra, at the end of the trial.

The distinction between the holding in the Flint case and the rule permitting inconsistency in pleading is explained in the Fuller case, supra, where the court said, 12 N.J.Super. 554, at page 561, 80 A.2d 135, at page 139:

"Nor are the decisions relied on by defendant to the contrary: Grobart v. Society, etc., 2 N.J. 136, 149, 65 A.2d 833 (1949); Stretch v. Watson, 6 N.J. Super. 456, 69 A.2d 596 (Ch.Div.1949); In re Perrone's Estate, 5 N.J. 514, 76 A.2d 518 (1950); Lizak v. Rottenbucher, 140 N.J.Eq. 76, 53 A.2d 362 (Ch.1947). In the Grobart case the court, by its own italics, criticizes inconsistent pleadings, only where they are set up in 'successive' pleadings. This is because, as the court says, 'shifting causes of action in successive pleading will completely block the purpose of all pleading, i. e., getting to an issue or issues * * *.' As to a party's changing position, as alluded to in the above Stretch, Perrone, and Lizak cases, this change of position occurred, not at the preliminary stage of pleading, before the party knew the full facts, but after the party knew the full facts, i. e., on final hearing or appeal. Clearly, knowing such full facts, it is but fair the party then should have elected his position. Though situations might perchance exist even then, when it would be a close question of fact, whether the jury would find fact A or fact B to exist. Hence it might aid justice, not to compel the party to gamble on the finding of the jury, but to submit his case to them alternatively or hypothetically. In other words, the party could submit to the court that, if fact A exists, then result (1) should follow, but if fact B exists, then result (2) should follow, this perchance in the form of a request for special verdict."

The reluctance of our courts to dismiss a complaint initially on technicalities rather than after a hearing on the merits of the alleged controversy is shown in Escoett v. Aldecress Country Club, 16 N.J. 438, at page 451, 109 A.2d 277, at page 284 (1954), where the court said:

"If, as may well be, the asserted wrongdoings have no foundation whatever, the defendants will have expeditious opportunity after the plaintiff has fairly had his day in court, to obtain complete vindication and relief by judgment of dismissal resting on the absence of merit rather than upon procedural deficiency. Cf. Ciocca v. Hacker, 4 N.J.Super. 28, 33, 66 A.2d 451, 453 (App.Div.1949), where the court rightly referred to the general policy against procedural frustrations of determinations on the merits as 'implicit in the philosophy of our new judicial structure and Rules.' See R.R. 4:1-2 and the Annotations thereto in 2 Schnitzer and Wildstein, New Jersey Rules Service (1954)."

IV. Conclusion.

The order appealed from is reversed and the cause remanded for further proceedings consistent herewith.

For reversal: Chief Justice VANDERBILT and Justices BURLING, JACOBS and BRENNAN—4.

For affirmance: Justices HEHER, OLIPHANT and WACHENFELD—3.

HEHER, J. (dissenting).

The complaint is vague and uncertain in its allegations and fundamentally incongruous in the right of action pleaded and the relief sought.

The first count alleges that the defendants, "as individuals and as officials" of the city, "did steal and did unlawfully, fraudulently, corruptly and with gross breach of trust, extort and appropriate to themselves property of the City, to wit, money * *, accomplished by the means of the extortion from employees of the City of 3% of the annual salary of each said employee during each year from 1917 to 1949," "in such manner and at such times as to have constituted, in law, thefts, defrauds and extortions from the city payroll funds, which were the property of the City, in that the 3% of salary of each city employee was extorted by threats and force by the defendants from the said city employees on a systematic annual basis," amounting "in law to an unlawful charge upon, and theft, defraud and extortion from, the City's treasury and budgeted appropriations for each such year," to the extent of "3% of City treasury funds and budgeted appropriations set aside or held or appropriated for salaries of City employees."

The second count, repeating these allegations by reference, asserts that "All such moneys extorted by the defendants from City employees under defendants' 3% extortion scheme were and are subject to be forfeited to the City for its own use and benefit, or as trustee for the use and benefit of the defrauded employees (or their heirs and administrators) from whom such moneys were extorted," and defendants "are required to forfeit all such moneys to plaintiff, in the amount of" 15 million dollars.

There is a demand for judgment in the sum stated and "the impressment of a trust" in that amount "upon the property and assets" of defendants "for the use and benefit of the plaintiff as beneficiary, or in the name of plaintiff as trustee for the use and benefit of all employees (or their heirs and administrators) of the plaintiff from whom" the moneys were "extorted."

There is no specification whatever of the acts and conduct constituting, "in law, thefts, defrauds and extortions from the city payroll funds." It is pleaded that the "extortion" was accomplished "in such manner and at such times" as to fall into the foregoing category of misconduct; there is no particularization of the "threats and force" by which the moneys were allegedly "extorted." A mere charge of extortion cannot be made to import the means by which it was accomplished. The crucial averment is a bare conclusion of law. And recovery of the money is demanded as the city's own or as trustee for the use and benefit of the employees or their legal representatives.

But the city cannot enforce such right as the employees or their heirs or administrators may have, as their trustee. It bears no such relation to them; and, as a branch of the State Government for local administration, limited in its powers to those expressly conferred or reasonably implied to effectuate the authority given in express terms, it is not endowed with capacity to act as a trustee for the individual employees or their legal representatives to enforce a trust *in invitum* against the defendants.

It was conceded on the oral argument that the moneys in question were earned by the employees by service actually rendered the city, and were paid to them by the city in the usual course, and the employees themselves, individually, made the disposition constituting the basis of this action; and that if there be the liability thus charged to the defendants, the employees themselves may enforce it, unless they were *particeps criminis,* and there is no such allegation. It became the peremptory duty of the city to appropriate the moneys needed to compensate its employees for services rendered, and to make payment accordingly; and, upon payment, title to the moneys passed to the employees, and they were free to use it as they chose, conformably to law.

Such being the case, the city has no right of action to recover the money as its own property. The defendants cannot be under a liability both to the city and to its employees, past and present, who made to defendants the asserted payments now in

controversy. Tl
matic.

Reading v. At
507, 1 All E.R
different. Ther
the Royal Arm
in Egypt, whil
private lorry an
thus enabling it
without being i
loaded with ca
were unknown.
sergeant receiv
sum of money
thorities later to
paid, it seems,
operation of a
transporting dr
Egyptian borde
money paid th
court-martial, ir
for the restitu
have been had
to his use, or
money taken p
the Crown.

The holding
using his posit
uniform to wh
to obtain the m
therefore the C
titled to the m
sented part of
Lord Porter ac
L. J. in Boston
v. Ansell, 39 C
money which is
be money had
for the princip
arises in such
any privity bet
opposite party
ployed to cond
the money ou
principal's han
use arises fro
principal and t
cause it is cont
or the servant
ceived without
Then the law i
there is an in

lished "in such
s" as to fall into
of misconduct;
on of the "threats
moneys were al-
mere charge of
le to import the
complished. The
ure conclusion of
the money is de-
or as trustee for
the employees or
s.

nforce such right
r heirs or admin-
their trustee. It
them; and, as a
ernment for local
in its powers to
l or reasonably im-
authority given in
endowed with ca-
for the individual
al representatives
*vilum* against the

the oral argument
ion were earned by
e actually rendered
to them by the city
and the employees
, made the disposi-
sis of this action;
the liability thus
nts, the employees
it, unless they were
here is no such alle-
peremptory duty of
the moneys needed
loyees for services
payment according-
, title to the moneys
, and they were free
conformably to law.

the city has no right
e money as its own
nts cannot be under
city and to its em-
sent, who made to
d payments now in

controversy. This would seem to be axiomatic.

Reading v. Attorney General, 1951, A.C. 507, 1 All E.R. (1951) 617, is radically different. There, a sergeant attached to the Royal Army Medical Corps stationed in Egypt, while in uniform, boarded a private lorry and escorted it through Cairo, thus enabling it to pass the civilian police without being inspected. The lorry was loaded with cases, the contents of which were unknown. On each occasion the sergeant received from a civilian a large sum of money of which the military authorities later took possession. The moneys paid, it seems, were bribes to facilitate the operation of a smuggling ring engaged in transporting drugs and liquor across the Egyptian border. The Crown seized the money paid the sergeant and he, after court-martial, interposed a petition of right for the restitution of money alleged to have been had and received by the Crown to his use, or for the payment to him of money taken possession of on behalf of the Crown.

The holding was that the sergeant was using his position in the Army, and the uniform to which his rank entitled him, to obtain the money which he received and therefore the Crown, his master, was entitled to the money. The moneys represented part of the proceeds of bribery. Lord Porter accepted the view of Bowen, L. J. in Boston Deep Sea Fishing & Ice Co. v. Ansell, 39 Ch.D. 367 (1888), that "the money which is sought to be recovered must be money had and received by the agent for the principal's use; but the use which arises in such a case, does not depend on any privity between the principal and the opposite party with whom the agent is employed to conduct business—it is not that the money ought to have gone into the principal's hands in the first instance; the use arises from the relation between the principal and the agent himself. It is because it is contrary to equity that the agent or the servant should retain money so received without the knowledge of his master. Then the law implies a use, that is to say, there is an implied contract, if you put it as a legal proposition—there is an equitable right, if you treat it as a matter of equity—as between the principal and agent that the agent should pay it over, which renders the agent liable to be sued for money had and received, and there is an equitable right in the master to receive it, and to take it out of the hands of the agent, which gives the principal a right to relief in equity." In response to the argument that, even so, this right to recover is subject to the qualification that "the sum obtained must have been obtained in the course of the sergeant's employment," Lord Porter said that it is "often convenient to speak of money obtained as received in the course of the servant's employment, but, strictly speaking, I do not think that expression accurately describes the position where a servant receives money by reason of his employment, but in dereliction of his duty." Such is not the case pleaded here.

Nor is United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 54 L.Ed. 769 (1910), in point. There, an Army captain and procurement officer entered into a profit-making arrangement with two contractors which involved the exercise of his official discretion in such a way as to give the contractors abnormal profits. The captain's illicit gain was traced into the hands of third persons, and made the subject of a constructive trust. And in City of Boston v. Santosuosso, 307 Mass. 302, 30 N.E.2d 278 (Sup.Jud.Ct.1940), the Mayor of Boston compromised a claim against the city in return for one-half of the proceeds of the settlement.

The Restatement, Agency, section 403, declares the rule to be that if an agent "receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its proceeds, to the principal." And there is also the rule, Ibid., section 380, that unless otherwise agreed, an agent is subject to a duty "not to conduct himself with such impropriety that he brings disrepute upon the principal or upon the business in which he is engaged." But for a breach

of this duty only actual damages would be recoverable.

There is no showing of disloyalty here. The circumstances under which the alleged payments were made, and the use to which they were to be put, are not pleaded; and there is no way of determining from the complaint whether there was, in fact and in law, a betrayal of the city's interest giving rise to a cause of action. Wrongdoing is not to be implied.

The essence of the declared cause of action, as elaborated on the oral argument, is the "extortion" on the given *pro rata* basis of moneys actually paid as salary to the city's employees which, if well founded in fact, would give rise to a right of action in the latter alone, for the money was theirs and not the city's. But on the hypothesis of a cause of action in the city also, the complaint is basically insufficient in particularization of the facts supporting the strictly legal conclusion of extortion.

It is fundamental in pleading that the facts be stated with reasonable definiteness and certainty to show the constituents of the pleaded cause of action and to apprise the adversary party of the case he is called upon to meet. Grobart v. Society for Establishing Useful Manufactures, 2 N.J. 136, 65 A.2d 833 (1949). It is not enough "'to refer to matters in an uncertain, doubtful, and ambiguous manner, as a kind of general dragnet to meet whatever evidence may be presented.'" Estabrook v. Webber Motor Co., 137 Me. 20, 15 A.2d 25, 28, 129 A.L.R. 1268 (Sup.Jud.Ct. 1940). Simplicity of pleading has relation to the form and not the substance. And a party "'cannot be heard * * * to contend for two diametrically opposed sets of facts.'" Flint Frozen Foods, Inc., v. Firemen's Insurance Co. of New Jersey, 8 N.J. 606, 611, 86 A.2d 673, 675 (1952).

I would affirm the judgment, as grounded upon a complaint deficient in the statement of a cause of action.

Mr. Justice OLIPHANT and Mr. Justice WACHENFELD join in this opinion.

18 N.J. 550

**STATE of New Jersey, Plaintiff-Respondent,**

**v.**

**John C. HAINES, Defendant-Appellant.**

**No. A-162.**

Supreme Court of New Jersey.

Argued May 23, 1955.

Decided June 20, 1955.

Defendant was convicted of false swearing. The Burlington County Court rendered judgment, and defendant appealed to the Superior Court, Appellate Division, and the appeal was certified to the Supreme Court on its own motion. The Supreme Court, Vanderbilt, C. J., held, inter alia, that extending the term of a grand jury beyond date at which it would ordinarily cease to function is a procedural matter within the rule-making power of Supreme Court under Const.1947, Art. VI, § II, par. 3.

Judgment affirmed.

William J. Brennan, Jr., and Heher and Oliphant, JJ., dissented.

**1. Courts ⚿78**

The grand jury is part of the court within constitutional provision giving Supreme Court power to make rules governing the administration, practice and procedure in the courts. Const.1947, Art. VI, § II, par. 3.

**2. Criminal Law ⚿304(2)**

It is common knowledge that in repealing Titles 2 and 3 and enacting Titles 2A and 3A the Legislature was deleting procedural matters from the statutory law. N.J. S. 2A and 3A, N.J.S.A.

**3. Courts ⚿80(1)**

**Grand Jury ⚿30**

The continuance of the term of a grand jury beyond expiration of term for which it was impaneled is a procedural manner within the rule-making powers of the Supreme Court under Constitution, and not a substan-

tive matter, a
authorizing e›
did not depriv
to continue e›
expiration of
1939, c. 161, §
J.S.A.; Const

**4. Indictment**

Indictmeı
extended terı
swearing in g
in connectioı
gambling law
public official.
thority of gr
ing its term
cial charge i
vestigation of
laws and mis
ficials. R.R.
J.S.A.

**5. Perjury ⚿**

In prose
burden of pr
intentionally,
need not be ı
fendant's int
circumstance.
fendant's der
S. 2A:131-4,

**6. Perjury ⚿**

Where d
behalf in pr
unconditiona
legedly false
jury without
that testimoı
it was true, h
of evidence t
that there w
such testimo
N.J.S.A.

**7. Perjury ⚿**

In prose
roboration o
ness to estab
or statement
N.J.S. 2A:1
115 A.2d