IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,       :
                                :
         Plaintiff,             :
                                :
    v.                          :    Civil Action No. 96-484-JJF
                                :
DAVID H. DONOVAN,               :
                                :
         Defendant.             :

Colm F. Connolly, Esquire, United States Attorney, and Patricia C. Hannigan, Esquire, Assistant United States Attorney, Wilmington, Delaware.
Sue Ellen Wooldridge, Esquire, Assistant Attorney General, Steven E. Rusak, Esquire, and Mary Anne Zivnuska, Esquire, Environment and Natural Resources Division, Washington, D.C.

Attorneys for Plaintiff.

David H. Donovan, Pro Se Defendant.

**MEMORANDUM OPINION**

December 21, 2006

Wilmington, Delaware

Farnan, District Judge.

    Presently before the Court is Defendant's Motion For Summary Judgment On The Form Of The Counter Complaint And A Petition For The Imposition Of The Public Trust And For Injunctive Relief And For Damages For The Taking of Private Property For Public Use Without Just Compensation (D.I. 82). For the reasons discussed, the Court has denied Defendant's Motion.

## I. BACKGROUND

    Defendant Donovan owns a 3.967 acre parcel near Smyrna, Delaware, which he and his wife purchased in September 1982, ten years after the enactment of the Clean Water Act. Defendant's parcel is a designated wetlands area adjacent to a tributary of Sawmill Branch, which flows into the Smyrna River. (D.I. 1). The tributary, Sawmill Branch and the Smyrna River are all navigable waters of the United States.

    In 1987, the Army Corps of Engineers ("Corps") discovered that Defendant was filling this land with material consisting of rocks, sand, and dirt. At this time, Defendant had filled .74 acres of the wetlands, which was permissible pursuant to Nationwide Permit 26. (D.I. 1). This Nationwide Permit authorized landowners to fill up to one acre of wetlands by right without prior Corps' approval. Id. The Corps informed Defendant several times during and after 1987 that he was required to

1

submit a "predischarge notification"[1] if he intended to fill more than one acre of wetlands.

In February 1993, the Corps further inspected Defendant's land and discovered that a total of 1.771 acres of wetland had been filled by Defendant. Defendant was ordered to either remove the extra .771 acres of fill or submit a predischarge notification to maintain the filled acreage. Defendant has refused to comply with either alternative, maintaining that the Corps lacks authority to regulate his activities, and has declared himself a foreign nation, threatening that if the Corps continues regulating his land, there will be "no choice but for the [D]elaware militia (the peoples militia) to defend by whatever means necessary." (D.I. 90, Ex. 1).

In 1996, the United States filed its Complaint, seeking injunctive relief and civil penalties against Defendant for violations of the Clean Water Act. The Court has previously concluded that Defendant is liable for violations of the Clean Water Act. (D.I. 51).

The parties agreed to resolve the remaining issues in this action through cross motions for summary judgment. The Court has resolved the Government's summary judgment motion by separate Memorandum Opinion and Order.

---

[1] A detailed explanation of "predischarge notification" can be found at D.I. 47, page 2, footnote 1.

2

## II. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

## III. DISCUSSION

By his Motion, Defendant contends that his land is outside the scope of the Clean Water Act, and therefore, by regulating Defendant's use of his land, the Government has effectuated a regulatory taking. Defendant also requests the Court to enjoin the Government from interfering with his use and enjoyment of his land.

3

A.  <u>Defendant's Challenge To The Corps' Jurisdiction</u>

As a threshold matter, Defendant contends that his land is outside the scope of the Clean Water Act (the "Act"). In essence, Defendant's argument is a challenge to the Corps' jurisdiction to regulate his land under the Act.

Pursuant to the Act, the Corps has jurisdiction over navigable waters of the United States for the purpose of preserving the integrity of the Nation's waters. 33 U.S.C. § 1251(a). Navigable waters are generally defined as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The phrase "waters of the United States" has been broadly interpreted to include traditional navigable waters, defined waters, tributaries, and wetlands adjacent to such waters and tributaries. 33 U.S.C. §§ 328.3(a)(2),(5) and(7); <u>Rapanos v. United States</u>, 126 S. Ct. 2208, 2216 (2006).

In the context of adjudicating Defendant's liability under the Act, the Court has previously concluded that Defendant's land is within the scope of the Act. (D.I. 51). Defendant has not offered any new argument or evidence justifying a change in the Court's previous decision. Accordingly, the Court will deny Defendant's Motion For Summary Judgment to the extent it seeks to relitigate jurisdictional issues already decided by the Court in the context of liability.

B.  Defendant's Fifth Amendment Takings Counter-claims

Defendant next contends that the Government's actions in this case amount to an unconstitutional taking under the Fifth Amendment. Defendant presented this argument in the context of a previous summary judgment motion, which the Court denied.

Claims under the Fifth Amendment's "Takings Clause" fall into one of two categories: a physical occupation or a regulatory taking. Brace v. United States, 72 Fed. Cl. 337, 346-347 (COFC 2006). A physical taking occurs, and compensation is owed, when the Government authorizes a physical occupation of the property or takes title to the property. Id. at 346. Where the Government regulates the use of property, however, compensation is only required "if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." Id. A "categorical" regulatory taking occurs when the Government's regulation of land denies a property owner of "all economically beneficial or productive use of [the] land." Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992). However, even if a property owner retains some economic benefit in his land, he may still be entitled to compensation for a partial regulatory taking. Palazzo v. Rhode Island, 533 U.S. 606 (2001); Eastern Enterprises

5

v. Apfel, 524 U.S. 498, 522 (1998). In determining whether a partial regulatory taking has occurred, courts should consider a "complex of factors" that include: "(i) the economic impact of the regulation on the claimant; (ii) the extent to which the regulation has interfered with distinct investment-backed expectations; and (iii) the character of governmental action." Penn Central Transportation Co. V. New York City, 438 U.S. 104, 124 (1978). The analysis of these factors should be guided "by the purpose of the Takings Clause, which is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Palazzo, 533 U.S. at 617 (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)).

In this case, the parties agree that the Government has not physically occupied Defendant's land or taken title to it. (D.I. 67 at 7). Accordingly, the Court concludes that Defendant cannot establish a physical taking. The Court also concludes that Defendant has not established a categorical regulatory taking, because he has not presented any evidence that the Government's regulation of his land has deprived him of all economic or productive use of the land.

The remaining question for the Court is whether Defendant has established a partial regulatory taking in light of the "complex of factors" set forth by the Supreme Court. After

6

weighing the circumstances of this case in light of the relevant factors, the Court concludes that Defendant has failed to establish a regulatory taking as a matter of law. Defendant purchased his property ten years after the enactment and codification of the Clean Water Act. Although Defendant may not have been aware of the Act's requirements, the Court cannot conclude that the Act has negatively impacted the property's fair market value, and Defendant has presented no evidence that the property's fair market value has been adversely affected. Further, because the Act was already effective at the time Defendant purchased the land, Defendant cannot demonstrate that he relied on a state of affairs that did not include the regulatory scheme, and therefore, Defendant cannot claim any adverse impact to his investment expectations. Loveladies Harbor Inc. v. United States, 28 F.3d 1171, 1177 (Fed. Cir. 1994).

With respect to the final factor concerning the "character of the government action," the Court concludes that this factor weighs against a conclusion that the Government's regulation in this case amounts to a taking. In considering the character of the government action, courts consider (1) the extent to which the action is retroactive, and (2) whether the action targets a particular individual. In this case, the Act is not being applied retroactively, and Defendant has not demonstrated that he is being singled out for application of the Act. See Brace, 72

Fed. Cl. at 356 (recognizing that Act and wetlands regulations are generally applicable to all similarly situated property owners and cannot be viewed as being directed solely at the plaintiffs). Accordingly, the Court concludes that Defendant has not established a partial taking of his property.

In sum, the Court concludes that Defendant has not established any of the elements required to demonstrate a taking under the Fifth Amendment.[2] Accordingly, the Court has denied Defendant's Motion For Summary Judgment on his takings counter-claim.[3]

---

[2] To the extent Defendant requests injunctive relief in his Motion For Summary Judgment, the Court has already denied Defendant's request in connection with a separate motion raising the same request for relief. (D.I. 101).

[3] Defendant has also pressed a counter-claim for conversion in summary judgment motions previously filed in this case. It is unclear to the Court whether Defendant continues to press such a claim in the context of the current Motion. However, to the extent Defendant's motion can be construed to raise the counterclaim of conversion, the Court concludes that Defendant is not entitled to relief. Defendant's counter-claim for conversion is based on his recordation of a deed. Specifically, Defendant has alleged that "on or about 10-1-82 Plaintiff's [sic] in Concert with the State of Delaware Converted Defendant's Land Property to their own use and profit by Investing Defendant's land Property Deeds in their Commercial Activities without Due Process of Law . . ." (D.I. 11). Under Delaware law, the tort of conversion is defined as the "wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it." See Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 439 (D. Del. 1999). As the Court has already concluded, Defendant has not demonstrated a taking, and Defendant has not offered any other evidence that would support a counterclaim of conversion. Accordingly, the Court has denied Defendant's Motion For Summary Judgment to the extent that it raises a counterclaim of

8

**IV. CONCLUSION**

For the reasons discussed, the Court concludes that Defendant has failed to establish that he is entitled to summary judgment on his counterclaims. Accordingly, the Court has denied Defendant's Motion For Summary Judgment On The Form Of The Counter Complaint And A Petition For The Imposition Of The Public Trust And For Injunctive Relief And For Damages For The Taking of Private Property For Public Use Without Just Compensation (D.I. 82).

An appropriate Order has been entered (D.I. 102).

---

conversion.

9