IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 96-484-JJF |
| DAVID H. DONOVAN, | : | |
| Defendant. | : | |

Colm F. Connolly, Esquire, United States Attorney, and Patricia C. Hannigan, Esquire, Assistant United States Attorney, Wilmington, Delaware.
Sue Ellen Wooldridge, Esquire, Assistant Attorney General, Steven E. Rusak, Esquire, and Mary Anne Zivnuska, Esquire, Environment and Natural Resources Division, Washington, D.C.

Attorneys for Plaintiff.

David H. Donovan, Pro Se Defendant.

**MEMORANDUM OPINION**

December 21, 2006
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is the United States' Motion For Summary Judgment On Restoration And Civil Penalty (D.I. 87). For the following reasons, the Court has granted in part and denied in part the Motion.

## I. BACKGROUND

Defendant Donovan owns a 3.967 acre parcel near Smyrna, Delaware, which he and his wife purchased in September 1982. Defendant's parcel is a designated wetlands area adjacent to a tributary of Sawmill Branch, which flows into the Smyrna River. (D.I. 1). The tributary, Sawmill Branch and the Smyrna River are all navigable waters of the United States.

In 1987, the Army Corps of Engineers ("Corps") discovered that Defendant was filling the land. Defendant had filled .74 acres of the wetlands, which was permissible pursuant to Nationwide Permit 26.[1] (D.I. 1). The Corps informed Defendant several times during and after 1987 that he was required to submit a "predischarge notification" if he intended to fill more than one acre of wetlands.

In February 1993, the Corps again inspected Defendant's land and discovered that a total of 1.771 acres of wetlands had been filled by Defendant. Defendant was ordered to either remove the

---

[1] Nationwide Permit 26 authorizes landowners to fill up to one acre of wetlands by right without prior approval from the Corps.

1

extra .771 acres of fill or submit a predischarge notification to maintain the filled acreage. Defendant refused to comply with either alternative.

In 1996, the United States filed its Complaint, seeking injunctive relief and civil penalties against Defendant for violations of the Clean Water Act. The Court granted summary judgment in favor of the Government as to Defendant's liability. The appropriate remedy is the subject of the Government's Motion.

**II. PARTIES' CONTENTIONS**

By its Motion, the Government seeks an order requiring Defendant to restore the 1.771 acres of wetlands he has filled. The Government also requests the Court to order Defendant to pay a civil penalty in the amount of $256,000. (D.I. 88).

In support of its remedy and penalty recommendations, the Government contends that Defendant has flagrantly violated the Clean Water Act, refused to cooperate with the Corps, declared himself immune from federal and state law, and attempted to conceal his assets by using shell companies and a false social security number. Id. Further, the Government contends that Defendant has the economic ability to pay a civil penalty in the amount sought by the Government. Id. Finally, the Government contends that Defendant's actions have destroyed wetlands that "had previously provided important natural resource functions, including water purification, storm water detention, flood

2

attenuation, flood plain benefits, and habitat for wildlife." (D.I. 88 at 1). These effects can be reversed once the fill is removed. Id.

Defendant has offered no direct response to the restoration or civil penalty issues raised by the Government. Rather, Defendant contends he has maintained the status quo of the land as it existed when the Army Corps of Engineers first got involved with this matter, and has not filled any more of his land since this action was commenced. (D.I. 34).

### III. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

3

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**IV. DISCUSSION**

    A. Restoration

By its Motion, the Government requests the Court to order Defendant to restore the full 1.771 acres of wetlands he filled. The Government further requests the Court to require Defendant to utilize the "Dredged and/or Fill Material Removal and Wetlands Restoration Plan" (the "Wetlands Restoration Plan") to accomplish the restoration.

Restoration of illegally destroyed wetlands is one type of injunctive relief contemplated by the Clean Water Act (the "Act"). 33 U.S.C. § 1319. Courts have recognized a mandatory duty to restore intentionally filled wetlands, unless the

4

equities weigh against restoration.  See e.g. United States v. Cumberland Farms, 826 F.2d 1151, 1161-65 (1st Cir. 1987), cert. denied, 484 U.S. 1061 (1988); United States v. Van Leuzen, 816 F. Supp. 1171, 1180 (S.D. Tex. 1993).  In evaluating the propriety of remediation or restoration proposals, courts consider three factors:  (1) whether the proposal will confer the maximum environmental benefits, (2) whether the proposal is achievable as a practical matter, and (3) whether the proposal bears an equitable relationship to the degree and kind of wrong it is intended to remedy.  United States v. Deaton, 332 F.3d 698, 714 (4th Cir. 2003).

In this case, the Court has already found Defendant liable for violating the Act, and Defendant has not advanced any equitable circumstances that militate against restoration. Although the Corps attempted to work with Defendant before the violations of the Act occurred, Defendant refused to cooperate filling more than the one acre of land permitted under law and declining to submit a permit for the additional acreage filled. In addition, Defendant violated three cease and desist letters, disregarded the opinions of Corp's experts on wetlands jurisdiction, and declared himself and his property immune from federal and state law in an attempt to frustrate the Government's efforts to bring him into compliance with the Act.  As courts have repeatedly recognized, this type of inequitable conduct on

5

the part of a defendant eviscerates any equitable arguments against restoration. <u>United States v. Pozsgai</u>, 999 F.2d 719, 736 (3d Cir. 1993) (holding that "repeated noncompliance with the Act and with the Corp's directives to stop filing foreclose any such equitable argument"); <u>United States v. Robinson</u>, 570 F. Supp. 1157, 1165 (M.D. Fla. 1983). Accordingly, in these circumstances, the Court concludes that restoration of the destroyed wetlands is an appropriate remedy.

Having concluded that restoration is appropriate in this case, the Court must next determine how much of the destroyed wetlands Defendant should be required to restore. By its Complaint and throughout a substantial portion of this litigation, the Government conceded that Defendant did not violate the Act until he filled more than the one acre of land permitted by Nationwide Permit 26. (D.I. 1; D.I. 47 at fn. 1). The Government has not demonstrated that the circumstances have changed so as to require Defendant to restore more than the .771 acres that exceeds the one acre which he was legally entitled to fill. Accordingly, the Court will require Defendant to restore .771 acres of wetlands.

As for the specific restoration proposal submitted by the Government, the Court concludes that the Wetlands Restoration Plan proposed by the Government presents a feasible means of restoring the destroyed wetlands to their previous condition and

6

reviving their ecological benefits. In this regard, the Court is persuaded that the Government's Plan will confer the maximum environmental benefit by stabilizing and restoring the site through the re-establishment of surface elevation levels, the removal of obstructing structures and the re-seeding of the land to allow for the natural re-vegetation of the site. With the modification of applying the Wetlands Restoration Plan to .771 acres, the Court is also persuaded that the restoration proposal is commensurate with the degree and kind of wrong sought to be remedied. Accordingly, the Court has granted Defendant's Motion to the extent that it seeks restoration of .771 acres of destroyed wetlands pursuant to the Wetlands Restoration Plan, but denied the Motion to the extent that it seeks restoration of the additional acre, the filling of which was permissible under Nationwide Permit 26.

### B. Civil Penalties

In addition to the remedy of restoration, the Government also requests the Court to assess a civil penalty against Defendant in the amount of $256,000. In support of its request, the Government contends that Defendant has engaged in serious violations of the Act, has received between $81,000 and $217,000 in economic benefit from his non-compliance with the Act, has made no effort to comply with the Act's requirements, and has the economic ability to pay such a fine. (D.I. 88). Defendant has

offered no evidence to the contrary, aside from contending that he has ceased filling his land during these proceedings, which he contends should be construed as a showing of good faith.

The Act provides that violators "shall be subject to a civil penalty[.]" 33 U.S.C. § 1319(d). This mandatory language requires a court to assess penalties for all proven violations of the Act. Natural Resources Defense Council v. Texaco Ref. And Mktg., 2 F.3d 493, 503 (3d. Cir. 1993). In calculating an appropriate penalty, the Court begins by determining the statutory maximum and then adjusting downward based on mitigating factors. 33 U.S.C. § 1319(d). In determining the amount of a civil penalty, the Court considers the following factors: (1) the seriousness of the violation, (2) any economic benefit gained from the violation, (3) any prior history of Act violations, (4) any good-faith efforts to comply with the statutory requirements, (5) the economic impact of the penalty on the violator, and (6) other such matters as justice may require. Id.

Reviewing the totality of the circumstances in this case in light of the relevant factors for assessment of a civil penalty, the Court concludes that a $256,000 penalty is appropriate, particularly where, as here, the maximum penalty for Defendant's repeated violations would fall in the range of $11 million to $15 million dollars in fines. Defendant's actions have harmed the environment by altering a natural water purification and flow

8

attenuation system.  This harm has continued throughout the pendency of this litigation.  Further, Defendant has gained a substantial economic benefit by delaying his compliance for over a decade.  This benefit is in the form of both potential investment return on the money that should have been spent on compliance, and a property value increase of $81,000.  Finally, the Government has shown that this fine will not have an overly harsh impact on Defendant, because he has the ability to pay it.

In contrast to the Government's presentation, Defendant has not offered any evidence challenging the Government's calculation of the maximum penalties, or its decision to seek a penalty of approximately $250,000, which is substantially less than the maximum allowable penalty.  Defendant contends that he stopped filling his land during the pendency of this litigation, and therefore, his actions should be considered as a measure of good faith to mitigate his penalty.  In the Court's view, however, Defendant's decision to discontinue his unlawful filling activities is conduct which limits his overall liability to the Government but is not conduct which provides a basis to further reduce his civil penalty for the illegal behavior currently before the Court.  Accordingly, the Court has granted the Government's Motion to the extent that it seeks a civil penalty assessment of $256,000.

**IV. CONCLUSION**

For the reasons discussed, the Court has granted the Government's Motion For Summary Judgement On Restoration And Civil Penalty And In Opposition To Defendant's Motions to the extent that it seeks restoration of .771 acres of wetlands pursuant to the Wetlands Restoration Plan and the imposition of a civil penalty in the amount of $256,000, and denied the motion to the extent that it seeks restoration of an additional acre of wetlands.

An appropriate order has been entered (D.I. 103).